Steven A. Marenberg (SB# 101033)
PAUL HASTINGS LLP
1999 Avenue of the Stars, 27th Floor
Los Angeles, CA 90067
Telephone: (310) 620-5700
stevenmarenberg@paulhastings.com

Aaron Charfoos (*pro hac vice*)
PAUL HASTINGS LLP
71 S. Wacker Drive, 45th Floor
Chicago, IL 60606
Telephone: (312) 499-6016
aaroncharfoos@paulhastings.com

Emma Hutchison (*pro hac vice*)
PAUL HASTINGS LLP
2050 M Street NW
Washington, DC 20036
Telephone: (202) 551-1700
emmahutchison@paulhastings.com

*Counsel for Defendant*
UBISOFT, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TREVOR LAKES, and ALEX RAJJOUB *on Behalf of Themselves and All Others Similarly Situated*,<br><br>Plaintiffs,<br><br>v.<br><br>UBISOFT, INC.,<br><br>Defendant. | Case No. 3:24-cv-06943-TLT<br><br>**DEFENDANT UBISOFT, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT**<br><br>Date:  March 4, 2025<br>Time:  2:00 p.m.<br>Courtroom:  9 – 19th Floor<br>Judge:  Honorable Trina L. Thompson<br><br>Trial date:  None set |

# **TABLE OF CONTENTS**

**Page(s)**

TABLE OF CONTENTS..................................................................................................I

INTRODUCTION.........................................................................................................1

STATEMENT OF ISSUES TO BE DECIDED ..........................................................1

REQUEST FOR JUDICIAL NOTICE .......................................................................2

RELEVANT FACTUAL BACKGROUND.................................................................3

I.     ALL VISITORS TO THE UBISOFT WEBSITE CAN CONSENT OR OPT OUT OF THE USE OF COOKIES AND PIXELS ..........................................................3

     A.     Notice to Website Users....................................................................3

     B.     Users Must Create an Account and Agree to the Privacy Policy Before Making a Purchase ....................................................................................5

II.    PRIVACY POLICY...........................................................................................7

III.   THE RELEVANT ALLEGATIONS IN PLAINTIFFS' COMPLAINT..............7

ARGUMENT.................................................................................................................8

I.     LEGAL STANDARD.........................................................................................8

     A.     Federal Rule of Civil Procedure 12(b)(6) ........................................8

II.    PLAINTIFFS CONSENTED TO UBISOFT'S DATA SHARING POLICIES, DEFEATING ALL OF THEIR CLAIMS AS A MATTER OF LAW.............................9

     A.     Plaintiffs Affirmatively Consented to the Use of Cookies and Pixels and Their CIPA, California Constitution Invasion of Privacy, Common Law Invasion of Privacy, and Federal Wiretap Act Claims Should Therefore be Dismissed ....................10

     B.     Likewise, No VPPA Violation Could Have Occurred as Plaintiffs Consented to Any Disclosure of Video Viewing Information..................................12

           1.     Website browsers consent to the collection, use, and sharing of activity data upon arriving on the Website ............................................. 13

           2.     Account holders again provide affirmative written consent during the account creation process .......................................................... 13

           3.     Account holders are conspicuously presented with the Privacy Policy during any purchase ................................................................... 13

           4.     Ubisoft users can withdraw consent to any data sharing at any time ........ 13

III.   INDEPENDENTLY, COUNTS 2 AND 3 SHOULD BE DISMISSED BECAUSE PLAINTIFFS HAD NO REASONABLE EXPECTATION OF PRIVACY ...............................14

IV.    PLAINTIFFS' CIPA CLAIM FAILS AS A MATTER OF LAW BECAUSE THERE IS NO TELEGRAPH OR TELEPHONE AND IT IS COVERED BY THE PARTY EXCEPTION ...................................................................................................................16

    A.    CIPA § 631 Does Not Apply to Internet Communications .................................17

    B.    Plaintiffs' Complaint Fails to Allege an Underlying Violation of § 631(a)'s Second Clause Because Plaintiffs Fail to Allege Interception "In Transit" .....................17

    C.    CIPA's "Party Exception" Also Applies to Defeat This Claim as a Matter of Law .........19

V.    THE COURT SHOULD DISMISS PLAINTIFFS' VPPA CLAIM BECAUSE THE COMPLAINT FAILS TO ALLEGE UBISOFT IS A VIDEO TAPE SERVICE PROVIDER.............................................................................................................................20

VI.    THE COURT SHOULD STRIKE IRRELEVANT ALLEGATIONS RELATED TO HEALTHCARE DEFENDANTS.........................................................................................22

CONCLUSION.................................................................................................................................23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aldana v. GameStop, Inc.*,
 No. 22-CV-7063-LTS, 2024 WL 708589 (S.D.N.Y. Feb. 21, 2024) ......................................21

*Aldana v. GameStop, Inc.*,
 No. 22-CV-7063-LTS-VF, 2024 WL 3104345 (S.D.N.Y. June 24, 2024) ............................21

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)...............................................................................................................9

*Byars v. Hot Topic, Inc.*,
 No. EDCV 22-1652 JGB (KKx), 2023 WL 2026994 (C.D. Cal. Feb. 14, 2023).............17, 20

*Caldwell v. Caldwell*,
 No. 05-cv-04166-PJH, 2006 WL 618511 (N.D. Cal. Mar. 13, 2006) .......................................2

*Cline v. Reetz-Laiolo*,
 329 F. Supp. 3d 1000 (N.D. Cal. 2018) .................................................................................10

*Cody v. Boscov's, Inc.*,
 No. 8:22-cv-01434-SSS-kkx, 2024 WL 2228973 (C.D. Cal. May 6, 2024) ....................18, 19

*Cody v. Lacoste USA, Inc.*,
 No. 8:23-cv-00235-SSS-DTBx, 2024 WL 3761288 (C.D. Cal. July 30, 2024)...............16, 18

*Cortina v. Goya Foods, Inc.*,
 94 F. Supp. 3d 1174 (S.D. Cal. 2015)....................................................................................22

*Coto Settlement v. Eisenberg*,
 593 F.3d 1031 (9th Cir. 2010) ................................................................................................2

*D'Angelo v. FCA US, LLC*,
 726 F. Supp. 3d 1179 (S.D. Cal. 2024)..................................................................................14

*Daniels-Hall v. Nat'l Educ. Ass'n*,
 629 F.3d 992 (9th Cir. 2010) ..................................................................................................9

*Datel Holdings, Ltd. v. Microsoft Corp.*,
 712 F. Supp. 2d 974 (N.D. Cal. 2010) .....................................................................................2

*Esparza v. Kohl's, Inc.*,
 723 F. Supp. 3d 934 (S.D. Cal. 2024).....................................................................................15

*Esparza v. UAG Escondido A1 Inc.*,
    No. 23cv0102, 2024 WL 559241 (S.D. Cal. Feb. 12, 2024) ................................................16

*In re Facebook, Inc. Internet Tracking Litig.*,
    956 F.3d 589 (9th Cir. 2020) ..........................................................................................14

*In re Google Assistant Privacy Litig.*,
    457 F. Supp. 3d 797 (N.D. Cal. 2020) .......................................................................11, 17

*In re Google Location Hist. Litig.*,
    428 F. Supp. 3d 185 (N.D. Cal. 2019) ...............................................................................2

*Hammerling v. Google LLC*,
    615 F. Supp. 3d 1069 (N.D. Cal. 2022) ...........................................................................15

*Hammerling v. Google LLC*,
    No. 21-cv-09004-CRB, 2022 WL 17365255 (N.D. Cal. Dec. 1, 2022) ..............................18

*Hernandez v. Hillsides, Inc.*,
    47 Cal. 4th 272 (2009) ....................................................................................................15

*Hernandez v. TLC of the Bay Area, Inc.*,
    263 F. Supp. 3d 849 (N.D. Cal. 2017) ................................................................................9

*Hill v. Nat'l Collegiate Athletic Ass'n*,
    7 Cal. 4th 1 (1994) ..........................................................................................................15

*In re Hulu Privacy Litigation*
    86 F. Supp. 3d 1090 (N.D. Cal. 2015) .............................................................................21

*Int'l Fed. of Pro. and Tech. Eng'rs, Loc. 21, AFL–CIO v. Superior Court*,
    42 Cal. 4th 319 (2007) ....................................................................................................14

*Javier v. Assurance IQ, LLC*,
    No. 4:20-cv-02860-JSW, 2021 WL 940319 (N.D. Cal. Mar. 9, 2021) ...........................9, 11

*Jones v. Tonal Sys., Inc.*,
    No. 3:23-cv-1267-JES-BGS, 2024 WL 4357558 (S.D. Cal. Sept. 30, 2024) .......................2

*Kent v. Microsoft Corp.*,
    No. SACV13-0091 DOC, 2013 WL 3353875 (C.D. Cal. July 1, 2013) ...............................11

*Knievel v. ESPN*,
    393 F. 3d 1068 (9th Circ. 2005) ........................................................................................3

*Konop v. Hawaiian Airlines, Inc.*,
    302 F.3d 868 (9th Cir. 2002) ...........................................................................................17

*Licea v. Am. Eagle Outfitters, Inc.*,
    659 F. Supp. 3d 1072 (C.D. Cal. 2023) .......................................................................18, 19

*Licea v. Cinmar, LLC*,
  No. CV 22-6454-MWF (JEM), 2023 WL 2415592 (C.D. Cal. Mar. 7, 2023) ........................17

*Martin v. Sephora USA, Inc.*,
  No. 1:22-cv-01355-JLT-SAB, 2023 WL 2717636 (E.D. Cal. Mar. 30, 2023), *report
  and recommendation adopted*, No. 1:22-cv-01355-JLT-SAB, 2023 WL 3061957
  (E.D. Cal. Apr. 24, 2023)............................................................................................19

*Mastel v. Miniclip SA*,
  549 F. Supp. 3d 1129 (E.D. Cal. 2021)................................................................16, 17

*Matthews v. Nat'l Football League Mgmt. Council*,
  688 F.3d 1107 (9th Cir. 2012) .....................................................................................2

*Mendoza v. Caesars Ent., Inc.*,
  No. 23-cv-03591, 2024 WL 2316544 (D.N.J. May 22, 2024)...........................................20, 21

*Merritt v. Countrywide Fin. Corp.*,
  No. 09-cv-01179-BLF, 2015 WL 5542992 (N.D. Cal. Sept. 17, 2015) ................................22

*Mollett v. Netflix, Inc.*,
  795 F.3d 1062 (9th Cir. 2015) ......................................................................................20

*Opperman v. Path, Inc.*,
  205 F. Supp. 3d 1064 (N.D. Cal. 2016) ..........................................................................10

*Parrino v. FHP, Inc.*,
  146 F. 3d 699 (9th Cir. 1998) *superseded by statute on other grounds as stated in
  Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 681 (9th Cir. 2006)..............................2

*Revitch v. New Moosejaw, LLC*,
  No. 18-cv-06827-VC, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ....................................19

*Silver v. Stripe Inc.*,
  No. 4:20-cv-08196-YGR, 2021 WL 3191752 (N.D. Cal. July 28, 2021) ...............................10

*Smith v. Facebook, Inc.*,
  262 F. Supp. 3d 943 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018)
  ............................................................................................................10, 11, 12, 15

*Smith v. Facebook, Inc.*,
  745 F. App'x (9th Cir. 2018) ..................................................................................9, 11, 12

*Steinle v. City & Cty. of S.F.*,
  919 F. 3d 1154 (9th Cir. 2019) .......................................................................................3

*Swarts v. Home Depot, Inc.*,
  689 F. Supp. 3d 732 (N.D. Cal. 2023) ...............................................................................17

*Valenzuela v. Keurig Green Mountain*,
 674 F. Supp. 3d 751 (N.D. Cal. 2023) ...................................................................18

*Whitaker v. Tesla Motors, Inc.*,
 985 F.3d 1173 (9th Cir. 2021) .............................................................................9

*Whittlestone, Inc. v. Handi-Craft Co.*,
 618 F.3d 970 (9th Cir. 2010) ..............................................................................22

*Williams v. What If Holdings, LLC*,
 No. C 22-03780 WHA, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) ...............................19

*Williams v. What If Holdings*,
 No. C 22-03780 WHA, 2023 WL 3451053 (N.D. Cal. Feb. 13, 2023)..................................19

*In re Yahoo Mail Litig.*,
 7 F. Supp. 3d 1016 (N.D. Cal. 2014) ....................................................................15

**Constitutions**

California Constitution Article I, § I .................................................................... *passim*

**Statutes**

California Invasion of Privacy Act, Cal. Penal Code § 631 .................................................. *passim*

Federal Wiretap Act, 18 U.S.C. § 2510, *et seq.*........................................................ *passim*

Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, *et seq.* ...................................... *passim*

**Court Rules**

Fed. R. Civ. P. 12(b) ...................................................................................1, 8, 9, 20, 22

Fed. R. Evid. 201 ..............................................................................................2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT**, on March 4, 2025 at 2:00pm, or as soon thereafter as this matter may be heard before the Honorable Trina L. Thompson, in Courtroom 9 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, 19th Floor, San Francisco, CA 94102, Defendant Ubisoft, Inc. will and hereby moves this Court for an order dismissing Plaintiffs' Complaint in its entirety for failure to state a claim.

The Motion is made under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Ubisoft asks this Court to dismiss the Complaint with prejudice because Plaintiffs fail to adequately plead a claim under the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, *et seq.*; the Federal Wiretap Act, 18 U.S.C. § 2510, *et seq.*; the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631; the California Constitution Art. I, § I right to privacy; and California Common Law Invasion of Privacy.

DATED:  December 16, 2024

PAUL HASTINGS LLP

By:  */s/ Steven A. Marenberg*
STEVEN A. MARENBERG

*Attorney for Defendant*
UBISOFT, INC.

DEFENDANT UBISOFT, INC.'S
MOTION TO DISMISS COMPLAINT

## INTRODUCTION

Ubisoft, Inc. ("Ubisoft") is one of the world's leading publishers and distributors of interactive gaming experiences. Plaintiffs, who are Ubisoft users, allege that Ubisoft violated a number of privacy laws. These allegations are legally flawed because, among other grounds, each of the Plaintiffs was notified of, and presented with opportunities to consent to, the very use of cookies and pixels about which they now complain. This is a matter that can be addressed on a motion to dismiss under Rule 12(b).

Specifically, the Court should dismiss Plaintiffs' Complaint because:

- All of the claims fail because users consented to the use of cookies and pixels when they agreed to the Ubisoft Cookies Settings, Privacy Policy, and sharing of data with third parties;

- Plaintiffs fail to allege facts sufficient to support their CIPA, Federal Wiretap Act, and California Constitution Invasion of Privacy and Common Law Invasion of Privacy claims; and

- The Complaint fails to establish that Ubisoft's video games are similar to the audiovisual materials covered by the VPPA, and even if Ubisoft was to be qualified as a "video tape service provider" covered by the statute, Plaintiffs have failed to allege which games contained cut scenes.

Therefore, the Court should dismiss all of Plaintiffs' claims with prejudice.

## STATEMENT OF ISSUES TO BE DECIDED

1.  Whether Plaintiffs' CIPA, Federal Wiretap Act, California Constitution Invasion of Privacy and Common Law Invasion of Privacy, and VPPA claims fail because Plaintiffs consented to the use of cookies and pixels.

2.  Whether Plaintiffs have stated a valid CIPA claim against a video game website where the party exception applies.

3.  Whether Plaintiffs pleaded a proper VPPA claim against a video game website where the Ninth Circuit has not addressed whether video games are covered by the VPPA, and the Complaint lacks detail to transform video games into prerecorded video cassette tapes or similar audiovisual materials.

4.  Whether Plaintiffs have stated a California Constitutional or Common Law privacy claim against a video game website where there is no expectation of privacy.

5.  Whether this Court should strike Paragraphs 167, 179, 180, 184, and Footnote 12 as impertinent and immaterial.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## REQUEST FOR JUDICIAL NOTICE

Pursuant to Federal Rule of Evidence 201, Ubisoft respectfully requests that the Court take judicial notice of the Ubisoft Website, www.ubisoft.com (the "Website"), and its Website policies covering cookies, pixels, and data sharing, submitted in support of Ubisoft's Motion to Dismiss.  Plaintiffs' Complaint relies on highly selective portions of Ubisoft's Website in a number of factual allegations and claims.  *See, e.g.*, ¶¶ 1, 2, 3, 85-97.  Ubisoft seeks to introduce additional portions of its publicly available Website, of which the Court may properly take judicial notice, so that the Court has a complete picture of the user's journey, what the user consents to, and the policies they are provided and agree to.  *See In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 189-90 (N.D. Cal. 2019) (granting defendant's request for judicial notice of publicly available websites in CIPA and California constitution invasion of privacy class action.); *Jones v. Tonal Sys., Inc.*, No. 3:23-cv-1267-JES-BGS, 2024 WL 4357558, at *2-3 (S.D. Cal. Sept. 30, 2024) (granting request for judicial notice of four printouts of publicly available website pages because plaintiff's "characterization of the [website] feature form the basis of her lawsuit.") (internal quotations omitted).

Judicial notice is appropriate for facts "not subject to reasonable dispute" that are either generally known within the jurisdiction of the trial court or are capable of accurate and ready determination by resorting to "sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Courts routinely take judicial notice of publicly available documents and publicly available articles or other news releases.  *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) ("On a motion to dismiss, [the court] may consider . . . matters of public record").

"[A]s a general matter, websites and their contents may be proper subjects for judicial notice" provided that the party submits a copy of the relevant webpage to the court.  *Caldwell v. Caldwell*, No. 05-cv-04166-PJH, 2006 WL 618511, at *4 (N.D. Cal. Mar. 13, 2006); *see also Matthews v. Nat'l Football League Mgmt. Council*, 688 F.3d 1107, 1113 (9th Cir. 2012).  Federal courts may take judicial notice to prevent plaintiffs from "deliberately omitting references to documents upon which their claims are based."  *Parrino v. FHP, Inc.*, 146 F. 3d 699, 705-706 (9th Cir. 1998) (*superseded by statute on other grounds as stated in Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 681 (9th Cir. 2006)); *see also Datel Holdings, Ltd. v. Microsoft Corp.*, 712 F. Supp. 2d 974, 983-84 (N.D. Cal. 2010) (taking judicial notice

of the existence of online terms of use documents, which were incorporated by reference into the complaint and contradicted the plaintiff's allegations). This Court should take judicial notice of the Ubisoft Website, and the policies publicly available on that Website including Ubisoft's Privacy Policy, Ubisoft's Cookies Settings, Ubisoft's Website Cookies Banner and related screens, as well as screens showing the account creation and purchase process. These are publicly available and Plaintiffs have pointed to the Website to form the basis of a number of allegations. Compl. ¶¶ 1, 2, 3, 85-97.[1]

Accordingly, Ubisoft respectfully requests that the Court take judicial notice of Exhibits A-L.

## RELEVANT FACTUAL BACKGROUND

Ubisoft was founded in 1986 as a gaming company to create and distribute a wide variety of video games. Ubisoft's games can be played on traditional gaming consoles such as Xbox and PlayStation, handheld gaming consoles such as Nintendo Switch and mobile devices. Ubisoft sells some of its video games and offers a subscription on its Website. Compl. ¶ 2.

## I.    ALL VISITORS TO THE UBISOFT WEBSITE CAN CONSENT OR OPT OUT OF THE USE OF COOKIES AND PIXELS

### A.    Notice to Website Users

The first time a user arrives at the Website, the user is presented with a Cookies Banner notifying him or her that by clicking "OK" and "continuing to navigate on the site" that "you accept the use of cookies by Ubisoft and its partners to offer advertising adapted to your interests," as shown in the image

---

[1] In the alternative, the Court may and should consider these documents as incorporated by reference into the Complaint. *See Knievel v. ESPN*, 393 F. 3d 1068, 1076 (9th Circ. 2005). A document is incorporated by reference if the plaintiff "refers extensively" to it or if the document "forms the basis of the plaintiff's claim." *Steinle v. City & Cty. of S.F.*, 919 F. 3d 1154, 1162 (9th Cir. 2019) (quoting *United States v. Ritchie*, 342 F. 3d 903, 908 (9th Cir. 2003)). Even if the plaintiff "does not explicitly allege the contents of [a particular] document in the complaint," a document may still be deemed incorporated in a complaint by reference where "the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document[.]" *Knievel*, 393 F.3d at 1076. The Court may consider Exhibits A-L under the incorporation by reference doctrine because the documents form the basis of Plaintiffs' Complaint and Plaintiffs explicitly and repeatedly rely on these documents. Compl. ¶¶ 1-4, 89-97.

1

below.  Declaration of Cristina Arion in Support of Ubisoft Inc.'s Motion to Dismiss ("Arion Decl.") ¶ 5,

2

Ex. A.[2]

3

4



5

6

If a user clicks on the "set your cookies" hyperlink, in the above banner, a pop-up appears with

7

more detailed options to change cookies consent preferences, as shown in the following image.  Arion

8

Decl. ¶ 6, Ex. D.

9

10

11

12

13

14

15



16

17

18

19

20

21

22

23

24

25

26

[2] This Cookies banner was in place on September 7, 2024 when Plaintiff Lakes made his purchase, Compl. ¶ 21. Since the time Ubisoft implemented its Cookies banner, the banner has remained materially the same while the design was slightly altered in March 2021 and on September 25, 2024.  *See* Arion Decl. ¶ 5.

27

28

1    If the user does not want to share his or her information with Ubisoft and third parties, the user can

2    click the "set your cookies" hyperlink to adjust the cookies he or she permits on the browser or click "OK"

3    to accept the default settings.  *Id.* ¶ 5, Ex. A.[3]

4    **B.    Users Must Create an Account and Agree to the Privacy Policy Before Making a**
          **Purchase**

5

6    Once a user makes a selection on the Cookies Banner, a user may proceed to the Website.  Compl.

7    ¶ 85.  However, in order to make any purchases on the Website, including purchasing a subscription to

8    Ubisoft+, a user must first create a Ubisoft account.  *Id.* ¶ 86.  When creating an account, the user is shown

9    the pop-up below (Arion Decl., Ex. H, emphasis added):

10



25

[3]  This Cookies Settings pop-up was in place on September 7, 2024 when Plaintiff Lakes made his
26   purchase, Compl. ¶ 21. Since the time Ubisoft implemented its Cookies settings, this pop-up remained
27   materially the same while the design was altered in March 2021 and on September 25, 2024.  *See* Arion
     Decl. ¶ 6.
28

1

2      No user can create a Ubisoft account without checking the box next to "I accept Ubisoft's Terms

3  of Use, Terms of Sale, and Privacy Policy," which hyperlinks to the policies mentioned on the Website,

4  as shown in the above image.  Arion Decl. ¶ 8, Ex. H.  Users are additionally given the option to agree to

5  share "personal and game data" with third parties for "marketing purposes."  Id.  A materially identical

6  account creation process has been in place since 2018.  Id. ¶ 8.  For any user that created an account, he

7  or she was notified by email in 2020 of changes to the Privacy Policy and required to agree to the Privacy

8  Policy on their next sign on.  Id. ¶ 10.  At the same time, they were also presented with opportunity to opt

   in or opt out of sharing of personal information with third parties.  Id.

9      After agreeing to the Privacy Policy and consenting to the sharing of personal and game data during

10  account creation, every time a user then makes a purchase, the user is ***again*** presented with the Privacy

11  Policy during the Ubisoft Website store checkout process, as exhibited below.  Id. ¶ 9, Ex. I.

12  Ubisoft also informs users that they can learn more about the processing of personal data in Ubisoft's

13  Privacy Policy, which is hyperlinked on the checkout screen below.  Id.



## II.    PRIVACY POLICY

Ubisoft's Privacy Policy, which all Ubisoft account holders must agree to *clearly informs users that their information will be shared with third parties*. *Id.* ¶ 12, Ex. L at 5, below.

### 5. How does Ubisoft share your Personal Data?

We may share your Data with:

- • • •
- • The partners who use your Data to provide you with personalised advertisements or Personalized Content.
  - ◦ To consult a list of Ubisoft's partners, please see the Cookies page.
  - ◦ To opt out of the sharing of your Data, please Section 6 "What are your rights and how do you exercise your rights", then to the paragraph "Give and withdraw your consent".

The Privacy Policy also explicitly outlines for users how they can give or withdraw their consent in the clearly-labeled section "**What are your rights and how do you exercise your rights?**". *Id.*, Ex. L at 6, below.

### 6. What are your rights and how do you exercise your rights?

- • • •
- • **Give and withdraw your consent – "Right to object and withdraw your consent":** At any time, you may withdraw your consent or object to the receipt of *newsletters* or advertising emails, the personalisation of advertisements or the sharing of your Data with our partners (except for subsidiaries and technical service providers):
  - ◦ on the Account management page, in the "Privacy and Communication" Section,
  - ◦ on the Cookies page, to set the Cookies,
  - ◦ for some of our mobile games, in the privacy settings,
  - ◦ on your telephone or your tablet, in the settings, by activating "Limit Ad Tracking" on Apple telephones, or activating "Opt-out of Ads Personalisation" on Android telephones. *

## III.    THE RELEVANT ALLEGATIONS IN PLAINTIFFS' COMPLAINT

Plaintiffs' class action Complaint filed on October 3, 2024 (ECF No. 1), centers on Ubisoft's alleged use of the Meta Pixel on its Website. Plaintiffs allege that Ubisoft violated the VPPA when it "knowingly and systematically disclosed Plaintiffs' personally identifiable information to Meta, without obtaining their consent, by purposely placing the Pixel on the Website with the knowledge it would collect user information." Compl. ¶ 40. Plaintiffs also allege that Ubisoft violated the California Invasion of Privacy Act and the Federal Wiretap Act because it "purposefully included the Pixel on the Website to intercept Plaintiffs' communications and redirect them to Meta," *id.* ¶ 125, without Plaintiffs' knowledge or consent. *Id.* ¶ 126. Plaintiffs further claim that these alleged disclosures constitute an invasion of privacy under California Common Law and violate the California Constitution. *Id.* ¶ 16. The Complaint

alleges that Plaintiff Lakes downloaded "at least one video game containing cinematics or cut scenes" after "subscrib[ing] to the Ubisoft+ service on September 7, 2024," *id.* ¶ 21, and that Plaintiff Rajjoub purchased "at least one video game containing cut scenes" on an unspecified date. *Id.* ¶ 22. Plaintiffs conclusively allege that they visited the Website "while logged into [their] Facebook account[s]," to download games that contain "cut scenes and cinematics." *Id*. ¶¶ 21, 22.[4]

In the Complaint, Plaintiffs purport to represent a nationwide Class and California Subclass of consumers that allegedly had information disclosed to Facebook via the Meta Pixel. *Id.* ¶ 127. The Complaint asserts five separate claims against Ubisoft for the alleged violations of: (1) the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, *et seq.*; (2) the Federal Wiretap Act, 18 U.S.C. § 2510, *et seq.*; (3) the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631; (4) the California Constitution Art. I, § I Right to Privacy; and (5) common law Invasion of Privacy by Defendant Ubisoft. Compl. ¶¶ 141-217. Plaintiffs request statutory damages, punitive damages, pre-judgment interest on all amounts awarded, an order of restitution and all other forms of monetary relief, injunctive and declaratory relief, including but not limited to removal of the Pixel from the Website or "add, and obtain, the appropriate consent from subscribers," and attorneys' fees. *Id.* at Prayer for Relief.

## ARGUMENT

This Court should dismiss Plaintiffs' Complaint with prejudice because it fails as a matter of law for myriad reasons, including that the Plaintiffs repeatedly consented to, and were informed of, the use of cookies and pixels on the Website.

## I.    LEGAL STANDARD

### A.    Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides that an action must be dismissed where, as here, the complaint fails "to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). In order to overcome a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted

---

[4] Moreover, the Complaint's allegations are asserted "upon information and belief based on the investigation of counsel," Compl. at 1. Thus, the Complaint does not show the actual experiences of the named Plaintiffs, but instead outlines and shows examples of Plaintiffs' attorneys' experience on the Website. *Id.* ¶¶ 89-104. The Complaint includes images from a dummy account made by Plaintiffs' counsel. *See id.*

as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted).  In deciding a motion to dismiss, while the plaintiff's allegations are taken as true, that presumption does not apply to allegations that are simply legal conclusions unconnected to the facts alleged.  *See Hernandez v. TLC of the Bay Area, Inc.*, 263 F. Supp. 3d 849, 852 (N.D. Cal. 2017).  A complaint that contains only legal conclusions or "[t]hreadbare recitals of the elements of a cause of action" without "factual allegations that plausibly gave rise to an entitlement of relief" is thus "fatally defective." *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176 (9th Cir. 2021) (citing *Iqbal*, 556 U.S. at 679-80) (alteration in original).  Further, the Court need not "accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

## II. PLAINTIFFS CONSENTED TO UBISOFT'S DATA SHARING POLICIES, DEFEATING ALL OF THEIR CLAIMS AS A MATTER OF LAW

An essential element of each of Plaintiffs' claims is lack of consent.  Specifically, Plaintiffs' CIPA (Count 5), Federal Wiretap Act (Count 4), California Common Law Invasion of Privacy (Count 2), California Constitution Invasion of Privacy (Count 3), and VPPA (Count 1), claims all turn on consent. Where lack of consent is an element of the claim, consideration of consent is appropriate on a motion to dismiss.  *E.g. Javier v. Assurance IQ, LLC*, No. 4:20-cv-02860-JSW, 2021 WL 940319, at *2 (N.D. Cal. Mar. 9, 2021) (explaining that "consent generally defeats privacy claims" and granting motion to dismiss CIPA and California Constitution Invasion of Privacy claims); *Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018) (affirming the dismissal of CIPA, California Constitution Invasion of Privacy, and tort claims based on plaintiff's consent to website privacy policy when plaintiff created account).  Here, the Court should dismiss Plaintiffs' Complaint in its entirety because the matters which the Court can take judicial notice of, and properly consider, establish that Plaintiffs repeatedly consented to, and were informed of, the use of cookies and pixels on the Website.  As such, dismissal of each and every one of Plaintiffs' claims is warranted.

**A.**    **Plaintiffs Affirmatively Consented to the Use of Cookies and Pixels and Their CIPA, California Constitution Invasion of Privacy, Common Law Invasion of Privacy, and Federal Wiretap Act Claims Should Therefore be Dismissed**

Plaintiffs' claims fail because they had notice of, and consented to, the use of cookies and pixels on the Website (including possibly sharing information with third parties) when they saw the Cookies Banner and created their accounts.  Each of Plaintiffs' claims includes an element of the lack of consent:

- ***California Invasion of Privacy (CIPA)***: Cal. Penal Code Section 631(a) prohibits wiretapping "without the ***consent*** of all parties to the communication."  *Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1072 (N.D. Cal. 2016) (user consent is a defense under CIPA) (emphasis added).

- ***California Constitution Invasion of Privacy and Common Law Privacy:***  Common Law Invasion of Privacy and California Constitution Invasion of Privacy claims (hereinafter "Plaintiffs' Invasion of Privacy claims" or "Counts 2 and 3") must establish that there was a reasonable expectation of privacy and a plaintiff's voluntary consent defeats both claims. *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 955-56 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018).

- ***Federal Wiretap Act:***  The [Federal] Wiretap Act prohibits the unauthorized "interception" of an "electronic communication."  18 U.S.C. § 2511(1)(a)-(e).  "[T]he Federal Wiretap Act prohibits the interception of any wire, oral, or electronic communications ***without the consent*** of at least one authorized party to the communication."  Compl. ¶ 189 (emphasis added).  "The analysis for a violation of CIPA is the same as that under the Federal Wiretap Act."  *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1051 (N.D. Cal. 2018) (internal citation omitted).

As explained above, *supra* at Background Sec. 1.A, *before, during and after* users create an account, they repeatedly consent to, and are presented with, notices that the Website uses cookies and pixels in the Cookies Consent Banner, the agreement to the Privacy Policy and the optional agreement to "Share My Data".  Arion Decl. ¶¶ 5-9, Ex. H.  Courts consistently hold that privacy policies, like Ubisoft's Privacy Policy here, can establish consent under CIPA and Federal Wiretap Act.  *See Silver v. Stripe Inc.*,

No. 4:20-cv-08196-YGR, 2021 WL 3191752, at *4 (N.D. Cal. July 28, 2021) (dismissing Federal Wiretap Act and CIPA claim because plaintiffs agreed to a privacy policy that "explicitly state[d] that consumers' information may be provided to [the defendant's] 'partners'"); *Smith*, 745 F. App'x at 8 (affirming consent established for wiretapping claims given that "[t]erms and [p]olicies contain numerous disclosures related to information collection on third-party websites"). The same is true of California Constitutional and Common Law Invasion of Privacy claims. *Smith*, 262 F. Supp. 3d at 955-56 (Plaintiffs' consent also bars their common-law tort claims and their claim for invasion of privacy under the California Constitution); *Kent v. Microsoft Corp.*, No. SACV13-0091 DOC ANx, 2013 WL 3353875, at *6 (C.D. Cal. July 1, 2013) (granting defendant's motion to dismiss because "plaintiffs generally may not assert a wrong arising out of an action which they consented to").

Plaintiffs allege their interactions with Ubisoft's Website were intercepted by Facebook "without consent." Compl. ¶¶ 175, 176, 179, 200, 203, 213, 216. But these conclusory allegations are little more than a formulaic recitation of the lack of consent elements of the CIPA statute, which is not enough to state a plausible claim for relief. *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 828 (N.D. Cal. 2020) (dismissing CIPA claim and noting that "Plaintiffs' allegation that the recordings 'were made without Plaintiffs' consent' is conclusory"). The implausibility of Plaintiffs' conclusory allegations about lack of consent is evident from Ubisoft's repeated, comprehensive disclosures regarding user data collection and the use of third-party cookies to Website users. Arion Decl. ¶¶ 5-9, Exs. A, H, I.

Where lack of consent is an element of the claim, consideration of consent is appropriate on a motion to dismiss. *See, e.g. Javier*, 2021 WL 940319 at *2 (explaining that "consent generally defeats privacy claims" and granting motion to dismiss CIPA and California Constitution Invasion of Privacy claims). In *Smith v. Facebook, Inc.*, the court granted a motion to dismiss CIPA, Federal Wiretap Act, California Constitutional and Common Law Invasion of Privacy claims arising from Facebook's collection of the plaintiffs' web browsing activity on several healthcare websites using the Meta Pixel. 262 F. Supp. 3d at 955. The court held that all of plaintiffs' claims were barred because plaintiffs consented to Facebook's sharing when they signed up for Facebook accounts and agreed to Facebook's Cookie Policy and Privacy Policy, which "discloses the precise conduct at issue" ... just like Ubisoft's Cookies Banner and Privacy Policy do here. *Id.* at 953-955. Like the plaintiffs in *Smith,* the named

Plaintiffs' conclusory allegations of lack of consent combined with their clear, affirmative consent to data sharing is fatal to their CIPA, Federal Wiretap Act, and Invasion of Privacy claims.

**B.      Likewise, No VPPA Violation Could Have Occurred as Plaintiffs Consented to Any Disclosure of Video Viewing Information**

Ubisoft's Cookies Banner, account creation consent, and checkout process also satisfies the VPPA's consent requirements, thereby requiring dismissal.  The VPPA allows for disclosure of a consumer's personally identifiable information when the disclosures are made with a consumer's "informed, written consent."  18 U.S.C. § 2710(b)(2)(B).  Under § 2710(b)(2)(B), the written consent must (1) be "in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer;" (2) be given at the time disclosure is sought or given in advance for a set period of time not to exceed two years, and (3) provide the consumer with the ability to opt out from disclosures "in a clear and conspicuous manner."  18 U.S.C. § 2710(b)(2)(B).

Users who purchase games on the Website repeatedly consent to the disclosure of their information.  Although a slightly different standard, Plaintiffs' VPPA claim (Count 1) similarly fails as all Website users expressly opt in to the collection, use, and sharing of their information by way of conspicuous terms (1) when they begin browsing the Website; (2) again when creating an account; and (3) a third time while completing any purchase.  Moreover, the Website offers users the ability to withdraw consent to any information sharing, at any time, through their account or device settings.

The consent and disclosure policies comply with the statutory requirements outlined by 18 U.S.C. § 2710(b)(2)(B).  The Ubisoft Website Cookies Banner, account creation, and checkout consent flow satisfies all of the requirements of VPPA's consent provision because at each point Ubisoft obtains consent (1) "in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer;" and (2) "at the time disclosure is sought" or "given in advance for a set period of time not to exceed two years," and because it provides the consumer with the ability to opt out from disclosures "in a clear and conspicuous manner."  18 U.S.C. § 2710(b)(2)(B).

**1.    Website browsers consent to the collection, use, and sharing of activity data upon arriving on the Website**

All visitors to Ubisoft's Website are put on notice that their activity information may be shared upon arriving on the Website.  This notice is in a manner "distinct and separate from any form setting forth other legal or financial obligations of the consumer."  18 U.S.C. § 2710(b)(2)(B)(i); *see also* Compl. ⁋ 36; *see also* Arion Decl. ⁋ 5, Ex. A.  The Website's Cookies Banner clearly informs users that by continuing on the Ubisoft Website, they are consenting to the collection, use, and sharing of activity information to enhance the user's experience and to allow for users to share activities via social media. Arion Decl. ⁋ 5, Ex. A.

**2.    Account holders again provide affirmative written consent during the account creation process**

To create an account, users are required to affirmatively consent to the Website's policies, including the Privacy Policy, by checking a box.  *Id.* ⁋ 8, Ex. H.  Additionally, users are given the opportunity to opt in or opt out from information sharing.  *Id.*  This disclosure is consistent with the VPPA's consent provision requiring consumers to provide written consent, and to provide the consumer with an ability to opt out of disclosures in a "clear and conspicuous manner" that is "distinct and separate." 18 U.S.C. § 2710(b)(2)(B).

**3.    Account holders are conspicuously presented with the Privacy Policy during any purchase**

When users purchase any content they are again told that their information is processed pursuant to the Privacy Policy, which explains how to withdraw such consent, and a hyperlink to the policy is prominently displayed.  In addition, purchasers are presented with, and agree to, to Ubisoft's Terms of Sale (which incorporates by reference the Privacy Policy)—which are both conspicuously hyperlinked for the purchaser—any time they purchase a product on the Website.  Arion Decl. ⁋ 9, Ex. I.

**4.    Ubisoft users can withdraw consent to any data sharing at any time**

The Website offers users the ability to withdraw consent to any information sharing, at any time, through their account or device settings.  The Privacy Policy informs users that they can "refuse Cookies or request their deletion as well as obtain the list of partners who are permitted to store and/or access these

Cookies, please see the Cookies page." *Id.* ¶ 12, Ex. L at 3.  It also explains that "You can also adjust your browser settings to understand when these Cookies are stored on your device or to disable the Cookies by consulting your browser's "Help" menu." *Id.*  Finally, section 6 of those same terms states that website visitors have the "right to object and withdraw [their] consent" to the "sharing of your Data" through (a) the Privacy and Communication Section of their Account management page, (b) on the Cookies page, or (c) in the settings of their devices. *Id.*, Ex. L at 6.

In light of the above-described consent and opt-out mechanisms, Plaintiffs' VPPA claim should be dismissed.

## III.    INDEPENDENTLY, COUNTS 2 AND 3 SHOULD BE DISMISSED BECAUSE PLAINTIFFS HAD NO REASONABLE EXPECTATION OF PRIVACY

Independent of the consent issue, Plaintiffs' Invasion of Privacy claims also fail as a matter of law because Plaintiffs' demonstrable awareness of the Website's use of cookies and pixels necessarily undermines their ability to plausibly allege they had a reasonable expectation of privacy, and that there was a serious invasion thereof.  *D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1206 (S.D. Cal. 2024) (dismissing invasion of privacy under California Constitution claim for failure to adequately plead a reasonable expectation of privacy).

It is settled California law that "[t]he party claiming a violation of the constitutional right of privacy established in Article I, Section 1 of the California Constitution must establish (1) a legally protected privacy interest, (2) *a reasonable expectation of privacy under the circumstances*, and (3) a serious invasion of the privacy interest."  Cal. Const., Art. I, § 1; *Int'l Fed. of Pro. and Tech. Eng'rs, Loc. 21, AFL–CIO v. Superior Court,* 42 Cal. 4th 319, 338 (2007)  (citing *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 39-40 (1994)) (emphasis added).  Similarly, "[t]o state a claim for intrusion upon seclusion under California common law, a plaintiff must plead that (1) a defendant 'intentionally intrude[d] into a place, conversation, or matter as to which the plaintiff has *a reasonable expectation of privacy*[,]' and (2) the intrusion 'occur[red] in a manner highly offensive to a reasonable person.'"  *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020) (citing *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272 (2009)) (emphasis added).

The California Constitution's standard for the right to privacy is similar to common law tort of intrusion. California law uses the same test in assessing allegations of privacy violations under both common and constitutional law. This test takes into consideration "(1) the nature of any intrusion upon reasonable expectations of privacy, and (2) the offensiveness or seriousness of the intrusion, including any justification and other relevant interests." *Hernandez*, 47 Cal. 4th at 288. "Because of the similarity of the tests, courts consider the claims together and ask whether: (1) there exist a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934, 946 (S.D. Cal. 2024) (citing to *Hernandez*, 47 Cal. 4th at 287).

"Courts consider the customs, practices, and circumstances surrounding the data collection, including the amount of data collected, the sensitivity of data collected, the manner of data collection, and the defendant's representations to its customers." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1088 (N.D. Cal. 2022); *see also*, *Hill*, 7 Cal. 4th at 37. Here, Plaintiffs fail to establish that Website users have a reasonable expectation of privacy when they are instantly, and on multiple occasions, informed that browsing data may be shared, and are given opportunities to opt out at any time. *See* Arion Decl. ¶¶ 5-9, Exs. A, G, H, I; *see also* Compl. Count 2 ¶¶ 170-186. Because Plaintiffs were repeatedly informed of, and had to consent to, the sharing of their information before sharing could occur there was no reasonable expectation of privacy, no intrusion of privacy, and no violation of the California Constitutional right to privacy. *Smith*, 262 F. Supp. 3d at 955-56 ("Plaintiff's consent ... bars their common-law tort claims and their claim for invasion of privacy under the California Constitution."); *Hill*, 7 Cal. 4th at 26 ("[T]he plaintiff in an invasion of privacy case must have conducted himself or herself in a manner consistent with an actual expectation of privacy, i.e., he or she must not have manifested by his or her conduct a voluntary consent to the invasive actions of defendant. If, as here, voluntary consent is present, a defendant's conduct will rarely be deemed 'highly offensive to a reasonable person' so as to justify tort liability."); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1037-38 (N.D. Cal. 2014) (holding that a plaintiff asserting a privacy claim under the California Constitution "must have conducted himself or herself in a manner consistent with an actual expectation of privacy, i.e., he or she must not have manifested by his or her conduct a voluntary consent to the invasive actions of defendant," and granting defendant's motion to dismiss).

Plaintiffs' agreement to the Website's conspicuous tracking and information sharing practices nullifies the allegations regarding invasion of privacy, and, therefore, Plaintiffs' Invasion of Privacy claims should be dismissed.

## IV. PLAINTIFFS' CIPA CLAIM FAILS AS A MATTER OF LAW BECAUSE THERE IS NO TELEGRAPH OR TELEPHONE AND IT IS COVERED BY THE PARTY EXCEPTION

Count 5 of Plaintiffs' Complaint purports to allege a violation of Section 631 of CIPA. Compl. ¶¶ 206-217. Under Plaintiffs' theory, Ubisoft aided and conspired with Meta to intercept Plaintiffs' Search Terms because Ubisoft knew the Search Terms would be sent to Meta. This argument fails under the plain terms of Section 631 because: (1) Section 631 does not apply to internet communications, (2) plaintiffs fail to allege any interception "in transit," and (3) the "party exception" applies.

CIPA § 631(a) makes three distinct and mutually independent patterns of conduct unlawful: (1) "'intentional wiretapping [with any telegraph or telephone],' (2) 'willfully attempting to learn the contents or meaning of a communication in transit over a wire,' and (3) 'attempting to use or communicate information obtained as a result of engaging in either of the two previous activities.'" *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1134 (E.D. Cal. 2021) (quoting *Tavernetti v. Super. Ct. of San Diego Cnty.*, 22 Cal. 3d 187, 192 (Cal. 1978)). Section 631(a) also includes a fourth basis for liability, for anyone "who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the other three bases for liability." *Id.*

"In order to sustain a claim under Section 631(a)(4), [a] [p]laintiff must adequately plead that [the third-party] itself engaged in conduct falling under one of the first three prongs of the statute." *Cody v. Lacoste USA, Inc.*, No. 8:23-cv-00235-SSS-DTBx, 2024 WL 3761288, at *2 (C.D. Cal. July 30, 2024) (dismissing CIPA claim against website owner where plaintiff failed to adequately allege the first and second clause of CIPA § 631(a)). To state a claim under the fourth clause, Plaintiffs must allege Meta has violated one of the first three clauses of Section 631(a), and that Ubisoft "aided, agreed with, employed, or conspired with that person or entity to commit those unlawful acts." *Esparza v. UAG Escondido A1 Inc.*, No. 23cv0102 DMS(KSC), 2024 WL 559241, at *2 (S.D. Cal. Feb. 12, 2024).

A. **CIPA § 631 Does Not Apply to Internet Communications**

The first prong of § 631(a) requires that Plaintiffs plausibly allege the communication at issue was transmitted over a "wire, line, cable or instrument." Cal. Pen. Code § 631(a). Plaintiffs are asserting that Ubisoft/Meta tapped or made an unauthorized connection with a website, not a telephone line. Compl. ⁋ 210 (alleging that the CIPA claim arises out of use of the Pixel on the "Website"); *id.* ⁋ 211 (alleging that the Plaintiffs use of "internet browser[s]" underly Plaintiffs' CIPA claims). Courts have interpreted the first clause of Section 631(a) as solely applicable to communications over telephones and not communications over the internet. *Swarts v. Home Depot, Inc*., 689 F. Supp. 3d 732, 743 (N.D. Cal. 2023) (citing to *What If Holdings, LLC*, 2022 WL 17869275 at *2 (affirming that the first section of 631(a) does not apply to the context of the internet) (internal quotations omitted)). Because any alleged wiretapping would have been done through embedded software code on communications made over the internet and not a "telegraph or telephone wire," Plaintiffs cannot establish an underlying violation by Ubisoft under the first clause of Section 631(a). *Mastel*, 549 F. Supp. 3d at 1134-35 (collecting decisions holding that this prohibition is limited to communications in "telegraph or telephone" contexts, and dismissing CIPA claim that failed to allege tapping of such communications); *see also In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d at 825 (holding same); *Licea v. Cinmar, LLC*, No. CV 22-6454-MWF (JEM), 2023 WL 2415592, at *5 (C.D. Cal. Mar. 7, 2023) (holding same); *Byars v. Hot Topic, Inc.*, No. EDCV 22-1652 JGB (KKx), 2023 WL 2026994, at *8 n.8 (C.D. Cal. Feb. 14, 2023) (holding same).

B. **Plaintiffs' Complaint Fails to Allege an Underlying Violation of § 631(a)'s Second Clause Because Plaintiffs Fail to Allege Interception "In Transit"**

The second clause of § 631(a) penalizes a party who "willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state . . . [.]" Cal. Penal Code § 631(a). The information allegedly sent to the Meta through the Pixel was not "in transit" as required by second clause of § 631 which "imputes liability when the defendant reads, or attempts to read, a communication that is 'in transit' . . . ." *Mastel*, 549 F. Supp. 3d at 1136 (emphasis added). For a communication "to be intercepted" it "must be acquired during transmission, not while it is in electronic

storage." *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) (analyzing in the context of the Wiretap Act).

The Ninth Circuit in *Konop* reasoned that "[t]his conclusion is consistent with the ordinary meaning of 'intercept,' which is 'to stop, seize, or interrupt in progress or course before arrival.'" *Id.* (quoting Webster's Ninth New Collegiate Dictionary 630 (1985)).  Numerous courts have held that paltry allegations of "instant" interception, such as those here, are insufficient to plead that the interception was made "in transit" as required under CIPA.  *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1084-85 (C.D. Cal. 2023) (dismissing Section 631(a) claims based on "[b]are allegations of recording and creating transcripts [that] do not specifically allege that Plaintiffs' messages were intercepted while in transit"); *Hammerling v. Google LLC*, No. 21-cv-09004-CRB, 2022 WL 17365255, at *10 (N.D. Cal. Dec. 1, 2022) (holding allegations that "Google collected 'real-time data' about [] use of third-party apps" insufficient to satisfy "in transit" element); *Cody v. Boscov's, Inc.*, No. 8:22-cv-01434-SSS-kkx, 2024 WL 2228973, at *3 (C.D. Cal. May 6, 2024) (dismissing plaintiff's Section 631(a) claims because "brief description of [service provider's] 'secret code…does not suggest that [service provider] necessarily uses that code to intercept customer communications while they are in transit, rather than to store and store such communications after they are received by [defendant]'"); *Cody v. Lacoste*, 2024 WL 3761288, at *2 (same).  Plaintiffs do not allege any plausible facts that Meta intercepted the contents of their communications while in transit.  *See* Compl. ¶¶ 206-217 (no allegations of real time interception).  Plaintiffs' Complaint "does little more than restate the pleading requirement of real time interception." *Valenzuela v. Keurig Green Mountain*, 674 F. Supp. 3d 751, 758 (N.D. Cal. 2023) (dismissing CIPA claims for failure to plead "in transit" element).

Indeed, as alleged, Meta does not "intercept" any communications at all; rather, Meta directly communicates with its own users' browsers.  Specifically, Plaintiffs contend that Meta uses certain cookies ("the fr and _fbp cookies") for Meta's "targeted advertising," and that the visitor's browser transmit(s) to Facebook the "c_user cookie or "fr cookie," based on the user's navigation around the web. Compl. ¶¶ 98-103.  Meta has its own agreements with its users, under which it places cookies that allow

it to communicate with them.[5]  Thus, there is no interception of Plaintiffs' communications "in transit," or otherwise.

As such, Plaintiff has failed to allege that the interception was made in transit as required under CIPA and the CIPA claim should be dismissed.

### C.    CIPA's "Party Exception" Also Applies to Defeat This Claim as a Matter of Law

Ubisoft cannot be held liable under the second or third prong of § 631 because the "party exception" applies to website operators. *See Williams v. What If Holdings, LLC*, No. C 22-03780 WHA, 2022 WL 17869275 at *2 (N.D. Cal. Dec. 22, 2022)  (explaining that a party to a conversation cannot be held liable as an eavesdropper).

Courts in this District have established that a party to a conversation, *i.e.* a website owner, cannot eavesdrop on its own conversation, a "[defendant]'s liability . . . is therefore based entirely on whether [the third party] violated Section 631(a)." *What If Holdings*, 2022 WL 17869275 at *2; *see also Revitch v. New Moosejaw, LLC*, No. 18-cv-06827-VC, 2019 WL 5485330 at *2 (N.D. Cal. Oct. 23, 2019) (noting that a defendant would not have violated Section 631 if it had made a transcript of the conversation with plaintiff and then transmitted a copy to a third party because "sharing a record is not eavesdropping"). And it is well-established that website operators are parties to the conversation. *Am. Eagle Outfitters*, 659 F. Supp. 3d at 1081.

Here, Ubisoft cannot be liable under the second or third prong of Section 631 for "eavesdropping" because it was a party to the purportedly "intercepted" communication and "§ 631(a)'s first and second clauses apply only to third parties and not to participants of a communication."  *Martin v. Sephora USA, Inc.*, No. 1:22-cv-01355-JLT-SAB, 2023 WL 2717636, at *10 (E.D. Cal. Mar. 30, 2023), *report and recommendation adopted*, No. 1:22-cv-01355-JLT-SAB, 2023 WL 3061957 (E.D. Cal. Apr. 24, 2023). Ultimately, the question is whether the technology (or actor) that is alleged to have been eavesdropping behaves more akin to a tape recorder utilized by the party to the conversation or as an eavesdropper "press[ing] up against a door to listen to a conversation." *Am. Eagle Outfitters*, 659 F. Supp. 3d at 1082

---

[5] Meta's User Terms regarding cookies state that the cookies "we use and how we use them may change over time as we improve and update Meta Products," further indicating that Meta alone has access and control over such cookies. Compl. n. 63 (citing https://www.facebook.com/privacy/policies/cookies/?entry_point=cookie_policy_redirect&entry=0).

(citing *Revitch*, 2019 WL 5485330, at *2). As alleged here, Pixel website tracking software acts "more as a recording device and less as a third-party eavesdropper." *What If Holdings*, 2023 WL 3451053 at *1 (denying leave to amend dismissed complaint alleging use of website tracking software violates CIPA). Accordingly, Plaintiffs' allegations make clear that the party exception applies to Ubisoft.

Further, Plaintiffs' claim fails for the separate reason that a website operator is not liable for aiding and abetting under Section 631 if there has been no wrongdoing. *See Cody v. Boscov's*, 2024 WL 2228973, at *2 ("[T]o sustain that [aiding and abetting] claim, Plaintiff must adequately plead that [the third-party] itself has engaged in conduct falling under one of the first three prongs of the statute."). The fact that there are no allegations that Meta committed any wrongdoing is fatal to Plaintiffs' claims here. *Byars*, 2023 WL 2026994, at *9 (an aiding and abetting theory is viable only if Meta "violated Section 631(a) in some way") (quoting *What If Holdings*, 2022 WL 17869275, at *2).

At bottom, Ubisoft committed no wrong when it *openly disclosed* its use of, and subsequently employed, the Meta Pixel. *See* Arion Decl. ⁋⁋ 6, 12, Exs. D, L. The Complaint falls woefully short in plausibly alleging how § 631(a) applies or alleging any "interception" of communications or wrongdoing by Meta. And even if those defects did not defeat Plaintiffs' CIPA claim, the "party exception" applies, and the CIPA claim should be dismissed.

## V.    THE COURT SHOULD DISMISS PLAINTIFFS' VPPA CLAIM BECAUSE THE COMPLAINT FAILS TO ALLEGE UBISOFT IS A VIDEO TAPE SERVICE PROVIDER

The Court should dismiss Plaintiffs' VPPA claim because they have not and cannot plausibly allege the requisite element of a VPPA violation. Specifically, to state a claim under § 2710(b) of the VPPA, Plaintiffs must allege that (1) Defendant is a "video tape service provider" ("VTSP"), that (2) disclosed a consumer's "personally identifiable information" to "any person," (3) "the disclosure was made knowingly, and (4) the disclosure was not authorized" by another part of the statute. *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015). A "video tape service provider" is defined as "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4). Here, Plaintiffs fail to plausibly allege that they purchased "prerecorded video cassette tapes or similar audio-

visual material." *Id.* This failure provides sufficient basis for the dismissal of Plaintiffs' VPPA claim under Rule 12(b)(6).

Courts consider the content of the purchased materials to determine whether a plaintiff has plausibly pleaded that a person is in the business of selling "similar audio visual materials." In *Mendoza v. Caesars Ent., Inc.*, No. 23-cv-03591, 2024 WL 2316544, (D.N.J. May 22, 2024), the court evaluated VPPA claims against an online gaming platform and found allegations of a VPPA claim insufficient where plaintiffs failed to provide sufficient details regarding cut scenes. "Plaintiff has not alleged sufficient facts to demonstrate that the video games offered on Defendant's Website are sufficiently similar to videotapes to render Ubisoft a [VTSP] under the VPPA because he has not alleged the games include any prerecorded content." *Id*. at *2-4. No court in this district has held that the VPPA covers video game designers or even "cut scenes."[6]

Moreover, the Complaint contains only the vaguest of allegations regarding Plaintiffs' transactions on the Website. Plaintiffs entirely fail to provide any detail regarding the video games containing alleged "cut scenes" at issue. The allegations state that Plaintiffs requested and/or downloaded "at least one video game" containing cut scenes and/or cinematics. Compl. ¶¶ 21, 22. While the Complaint generally lists Plaintiffs' alleged purchases in a footnote, Compl. at 4, n. 4, 5, it fails to provide any insight into the nature of the alleged "cut scenes and cinematics" purportedly contained in their purchases. *Id.* ¶¶ 21, 22. Nor does the Complaint include any examples or explanations of what Plaintiffs allege constitutes "similar audio visual materials" under the VPPA. The allegations fail to specify which games contain cut scenes. This is not sufficient under the standard outlined in *Caesars Entertainment*. 2024 WL 2316544, at *2-4.

In addition to these deficiencies, the Complaint provides no substance pertaining to Plaintiff Rajjoub to support assertions that games were purchased at all. The Complaint vaguely alleges that Plaintiff Rajjoub purchased "at least one video game containing cut scenes." Compl. ¶ 22. The Complaint

---

[6] *But see Aldana v. GameStop, Inc.*, No. 22-CV-7063-LTS, 2024 WL 708589, at *3 (S.D.N.Y. Feb. 21, 2024), motion to certify appeal denied, No. 22-CV-7063-LTS-VF, 2024 WL 3104345 (S.D.N.Y. June 24, 2024) (finding that plaintiffs plausibly alleged GameStop is a VTSP when they included screenshots of "cut scenes" from the video games plaintiffs purchased). However, although the *Aldana* court held that the GameStop website, which is a video game retailer, is a VTSP under the statute, "[t]he Court's narrow holding hinged on the nature of the cut scenes allegedly contained in the video games that Plaintiffs purchased from GameStop." *Aldana*, 2024 WL 3104345, at *3.

does not specify a date on which Plaintiff Rajjoub made his account or completed a purchase, the name of the game(s) he purchased, the date he downloaded a game, or when he searched for games. *Id.* These allegations are not sufficient under *In re Hulu Privacy Litigation* 86 F. Supp. 3d 1090, 1095 (N.D. Cal. 2015).

Further, the bulk of the allegations in the Complaint related to the Ubisoft Website appear to be based on ***counsel's***, not Plaintiffs', experience with the Website. *See* Compl. ¶ 97 ("When purchasing the above game, ***for example*****…") (emphasis added); *id.* ¶ 89 ("When a user searches for a video game, ***for example*****…") (emphasis added); *id.* ¶¶ 89-97 (generally describing the Website's functionality). Counsel's experience is an insufficient substitute for allegations that should be based on Plaintiffs' personal experiences.

For these additional and independent reasons, Plaintiffs' VPPA claims should be dismissed.

## VI.   THE COURT SHOULD STRIKE IRRELEVANT ALLEGATIONS RELATED TO HEALTHCARE DEFENDANTS.

A review of the Complaint reveals that it includes numerous allegations that were apparently cut and pasted from a previous complaint filed by Plaintiffs' counsel (against a defendant in the healthcare industry) and have nothing to do with Ubisoft. *See* Compl. ¶¶ 45 n.12, 167, 179, 180, 184. These allegations are nearly word-for-word copies of allegations made in the prior litigations filed by Plaintiffs' counsel and do not apply to this case. Indeed, these four paragraphs and footnote contain allegations related to "Healthcare Defendant" and "healthcare providers" that are completely inapplicable to Ubisoft, a video game publisher. Tellingly, Plaintiffs make no other reference to "Healthcare Defendant" in their Complaint.

The Court should strike such allegations pursuant to Rule 12(f). A "court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "An 'immaterial' matter has no essential or important relationship to the claim for relief or defenses pleaded." *Cortina v. Goya Foods, Inc.*, 94 F. Supp. 3d 1174, 1182 (S.D. Cal. 2015). Similarly, "[a]n 'impertinent' allegation is neither necessary nor relevant to the issues involved in the action." *Id.* Ultimately, the purpose of a Rule 12(f) motion to strike is "to avoid the expenditure of time and money that must arise

from litigating spurious issues by dispensing with those issues prior to trial[.]" *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quotation omitted).

This Court should therefore use Rule 12(f) to strike paragraphs 167, 179, 180, 184, and footnote 12 because the allegations contained therein "have no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party." *Cortina*, 94 F. Supp. 3d at 1182. Ubisoft should not have to defend allegations simply because Plaintiffs' counsel failed to verify the applicability of the allegations when it cut and pasted them from its previous complaint. *See Merritt v. Countrywide Fin. Corp.*, No. 09-cv-01179-BLF, 2015 WL 5542992, at *13 (N.D. Cal. Sept. 17, 2015) (granting motion to strike where "a number of paragraphs contain . . . unrelated information from other proceedings").

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss Plaintiffs' Complaint with prejudice.

DATED:  December 16, 2024

PAUL HASTINGS LLP

By:  */s/ Steven A. Marenberg*
STEVEN A. MARENBERG

*Attorney for Defendant*
UBISOFT, INC.