BRANDON M. WISE*
**PEIFFER WOLF CARR**
**KANE CONWAY & WISE, LLP**
One US Bank Plaza, Suite 1950
St. Louis, MO 63104
Tel: (314) 833-4825
bwise@peifferwolf.com

*Counsel for Plaintiffs*

**admitted pro hac vice*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TREVOR LAKES, and ALEX RAJJOUB *on Behalf of Themselves and All Others Similarly Situated,*<br><br>Plaintiffs,<br>v.<br><br>UBISOFT, INC.,<br><br>Defendant. | Case No. 4:24-cv-06943-KAW<br><br>**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>[ORAL ARGUMENT REQUESTED]<br><br>Hearing Date: April 1, 2025<br>Hearing Time: 2:00 p.m.<br><br>Honorable Kandis A. Westmore |

# TABLE OF CONTENTS

Page(s)

TABLE OF CONTENTS ....................................................................................................i

TABLE OF AUTHORITIES ........................................................................................ iii

I. PRELIMINARY STATEMENT ....................................................................................1

II. FACTUAL ALLEGATIONS ........................................................................................1

III. LEGAL STANDARD ....................................................................................................3

IV. ARGUMENT .................................................................................................................4

A. UBISOFT VIOLATED THE VPPA. ...........................................................................4

1. UBISOFT IS A VTSP. ..................................................................................................4

2. UBISOFT DID NOT OBTAIN VPPA RECOGNIZED CONSENT. ..............................7

a. There is not "distinct and separate" consent. ..............................................7

b. No consent complies with the VPPA's temporal limitations. ................9

B. UBISOFT VIOLATED THE ECPA. .........................................................................10

1. UBISOFT'S CONDUCT IS NOT IMMUNIZED UNDER 18 U.S.C. § 2511(2)(d). ........10

a. The Party Exception does not apply to Ubisoft's Use of the Pixel.......10

b. The Consent Exception does not apply to Ubisoft...............................11

i. Ubisoft failed to establish a party to the intercepted communications consented to Meta's interception of PII.........11

ii. Ubisoft failed to establish Plaintiffs consented to Meta's interception of PII via Ubisoft's disclosures and Terms...........12

iii. Ubisoft failed to establish Plaintiffs consented to Meta's interception of PII via Ubisoft's disclosures and Terms...........16

iv. The crime-tort exception independently prevents Ubisoft from claiming a defense under 18 U.S.C. § 2511(2)(d)............16

C. PLAINTIFFS ADEQUATELY ALLEGE INTRUSION AND INVASION OF PRIVACY CLAIMS. ..........................................................18

D. PLAINTIFFS SUFFICIENTLY PLEAD THEIR CIPA § 631 CLAIM. ............... 19

1. PLAINTIFFS SUFFICIENTLY ALLEGED META INTERCEPTED PLAINTIFF'S PII "IN TRANSIT." ............... 20

2. THE CIPA PARTY EXEMPTION DOES NOT APPLY TO META. ............... 21

3. DEFENDANT AIDED AND ABETTED META'S WIRETAPPING. ............... 23

E. PLAINTIFFS SEEK LEAVE TO AMEND. ............... 23

V. CONCLUSION ............... 24

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Aldana v. GameStop, Inc.*,
No. 22-CV-7063-LTS, 2024 WL 708589 (S.D.N.Y. Feb. 21, 2024) ............................ 5, 7

*Ambrose v. Boston Globe Media Partners LLC*,
2022 WL 4329373 (D. Mass. Sept. 19, 2022) ............................................................ 6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................................... 3

*Belozerov v. Gannett Co*.,
2022 WL 17832185, (D. Mass. Dec. 20, 2022)........................................................... 6

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) .................................................................................... 15

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. Mar. 12, 2021) ..................................................... 11

*Calhoun v. Google, LLC*,
113 F.4th at 1150 (9th Cir. 2024) ............................................................................ 14

*Campbell v. Facebook, Inc*.,
77 F. Supp. 3d 836 (N.D. Cal. 2014) ........................................................................ 12

*Cappello v. Walmart Inc.*,
No. 18-cv-06678-RS, 2019 WL 11687705 (N.D. Cal. Apr. 5, 2019)............................. 9

*Caro v. Weintraub*,
618 F.3d 94, (2d Cir. 2010) ...................................................................................... 17

*Castillo v. Costco Wholesale Corporation*,
No. 2:23-cv-01548, 2024 WL 4785136 (W.D. Wash. Nov. 14, 2024) .......................... 17

*Cooper v. Mount Sinai Health Systems, Inc.*,
No. 23-cv-9485, 2024 WL 3586357 (S.D.N.Y. July 30, 2024) ..................................... 17

*Czarnionka v. Epoch Times Ass'n, Inc*.,
No. 22 CIV. 6348 (AKH), 2022 WL 17069810 (S.D.N.Y. Nov. 17, 2022) ............ 7, 10-11

*D'Angelo v. Penny Opco, LLC*,
2023 WL 7006793, (S.D. Cal. Oct. 24, 2023) ............................................................ 20

*Dytch v. Moussaka Mediterranean Kitchen LLC*,
No. 20-CV-0603SBA, 2022 WL 36006 (N.D. Cal. Jan. 4, 2022) .................................. 23

*Eminence Capital, LLC. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) .................................................................................. 23

*Esparza v. Gen. Digit. Inc.*,
2024 WL 655986, (C.D. Cal. Jan. 16, 2024) ............................................................ 20

*Esparza v. UAG Escondido A1 Inc.*,
2024 WL 559241, (S.D. Cal. Feb. 12, 2024) ............................................................ 20

*Flodin v. Cent. Garden & Pet Co.*,
No. 21-CV-01631-JST2022 WL 20299955 (N.D. Cal. Jan. 20, 2022) .......................... 23

*Gay v. Garnet Health*,
No. 23-cv-06950 (NSR), 2024 WL 4203263 (S.D.N.Y. Sept. 16, 2024) ........................ 18

*Heerde v. Learfield Commc'ns, LLC*,
2024 WL 3573874, (C.D. Cal. July 19, 2024) ........................................................... 11

*Humphrey v. J.M. Smucker Company*,
2023 WL 3592093, (N.D. Cal. May 22, 2023) ............................................................ 3

*In re DoubleClick Inc. Privacy Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001) ....................................................................... 16

*In re Facebook, Inc., Consumer Privacy User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ................................................................... 7, 12

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589, (9th Cir. 2020) .................................................................................. 18

*In re Google, Inc.*,
2013 WL 5423918, (N.D. Cal. Sept. 26, 2013) .......................................................... 12

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015) ..................................................................................... 18

*In re Google Inc., Gmail Litig.*,
2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) ........................................................... 16

*In re Pharmatrak, Inc.*,
329 F.3d 9 (1st Cir. 2003) ........................................................................................ 11

*In re Vizio, Inc. Consumer Privacy Litig*.,
238 F. Supp 3d 1204 (C.D. Cal. 2017) ........ 5, 6, 7, 18

*Jackson v. Fandom, Inc*.,
2023 WL 4670285, (N.D. Cal. July 20, 2023) ........ 7

*James v. The Walt Disney Co*.,
No. 3:23-cv-2500, 2023 WL 7392285 (N.D. Cal. Nov. 8, 2023) ........ 21

*Javier v. Assurance IQ, LLC*,
No. 21-16351, 2022 WL 1744107 (9th Cir. May 31, 2022) ........ 11

*Javier v. Assurance IQ*, LLC,
649 F. Supp. 3d 891, 900 (N.D. Cal. Jan. 5, 2023) ........ 22, 23

*Kane v. University of Rochester*,
No. 23-cv-6027-FPG, 2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024) ........ 17

*Kauffman v. Papa John's Int'l, Inc*.,
Case No. 22-cv-1492-L-MSB, 2024 WL 171363 (S.D. Cal. Jan. 12, 2024) ........ 22

*Konop v. Hawaiian Airlines, Inc*.,
302 F.3d 868 (9th Cir. 2002) ........ 20

*Kurowski v. Rush Sys. for Health*,
No. 22-c-5380, 2024 WL 3455020 (N.D. Ill. July 18, 2024) ........ 18

*Lebakken v. WebMD, LLC*,
640 F. Supp. 3d 1335 (N.D. Ga. 2022) ........ 6

*Licea v. Am. Eagle Outfitters, Inc*.,
659 F. Supp. 3d 1072 (C.D. Cal. 2023) ........ 21

*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000) ........ 3

*Louth v. NFL Enters. LLC*,
2022 WL 4130866 (D.R.I. Sept. 12, 2022) ........ 7

*Mata v. Zillow Grp., Inc*.,
No. 24-cv-01095-DMS-VET, 2024 WL 5161955 (S.D. Cal. Dec. 18, 2024) ........ 20

*Padron v. Lara*,
2018 WL 2213462, (E.D. Cal. May 11, 2018) ........ 19

*Planned Parenthood Fed'n of Am., Inc., v. Ctr. for Med. Progress*,
214 F. Supp. 3d 808 (N.D. Cal. 2016) .................... 16

*Price v. Carnival Corp.*,
No. 3:23-cv-236, 2024 WL 221437 (S.D. Cal. Jan. 19, 2024) .................... 16, 22

*Matera v. Google Inc.*,
2016 WL 5339806, (N.D. Cal. Sept. 23, 2016) .................... 11

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876, (C.D. Cal. 2024) .................... 17

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) .................... 19, 22

*Rodriguez v. Ford Motor Co.*,
722 F. Supp. 3d 1104 (S.D. Cal. 2024) .................... 22

*Somers v. Apple*,
729 F.3d 953 (9th Cir. 2013) .................... 3

*Stark v. Patreon, Inc.*,
2022 WL 7652166, (N.D. Cal. Oct. 13, 2022) .................... 7

*Underhill v. Kornblum*,
No. 3:16-cv-1598, 2017 WL 2869734 (S.D. Cal. Mar. 16, 2017) .................... 19

*Williams v. What If Holdings, LLC* ("*Williams I*"),
No. C 22-03780 WHA, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) .................... 21-22

*Yershov v. Gannett Satellite Info. Network, Inc.*,
820 F.3d 482, 488 (1st Cir. 2016) .................... 6

**Statutes**

Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA") .................... *passim*

Federal Wiretap Act, 18 U.S.C. § 2511 .................... *passim*

California Invasion of Privacy Act, Cal. Pen. Code § 631(a) ("CIPA") .................... *passim*

**Rules**

Federal Rule of Civil Procedure 12(b)(6) .................... 3

Federal Rule of Civil Procedure 15(a)(2) .................... 23

Federal Rule of Evidence 201(b) .................... 3

## I. PRELIMINARY STATEMENT

This putative class action is brought by Plaintiffs Trevor Lakes and Alex Rajjoub ("Plaintiffs") for violations of the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"), the Federal Wiretap Act, 18 U.S.C. §§ 2510 *et seq.* ("ECPA"), and California law. *See*, Compl. ¶¶ 141-159; 160-168; 170-186; 187-205; 206-217. Defendant Ubisoft, Inc. ("Defendant" or "Ubisoft") operates https://www.ubisoft.com/ (collectively with all subdomains the "Website"), which provides users with the ability to search for, purchase, and download video game products, that, importantly here, feature cinematic prerecorded video clips called "cutscenes."

Ubisoft installed a tracking product, developed by Meta Platforms Inc., formerly known as Facebook Inc., called "the Facebook Pixel" on its Website. The Facebook Pixel is a small piece of computer code that collected and disclosed personally identifiable information ("PII") about the users of Ubisoft's Website – and the actions that they took on the Website – to Meta. Among other things, the Facebook Pixel transmits the titles of video containing products that users request or obtain, together with the viewer's "Facebook ID," a unique identifier anyone can use to look up the viewer's Facebook profile, which contains detailed information about the user.

Ubisoft's motion to dismiss should be denied in its entirety. Ubisoft qualifies as a "video tape service provider" because its business involves providing video content to consumers, but Ubisoft wholly failed to comply with the VPPA's informed, written consent requirements. Reasonable users of the Website do not expect that their personal information is being shared with third parties, and they had a reasonable expectation of privacy while visiting and utilizing the Website.

Through its unlawful conduct, Ubisoft violated the VPPA, the ECPA, as well as California law, by disclosing PII about its users and the video materials they request or obtain without their informed, written consent. Ubisoft's arguments to the contrary are without merit, and as such, its motion to dismiss should be denied.

## II. FACTUAL ALLEGATIONS

Defendant is a video game developer, publisher, and marketer. ¶¶ 2, 3, 23, 145. Defendant

operates the Website which allows users to purchase video games containing pre-recorded audio-visual content. ¶¶ 1, 3, 21-22, 38. Through the Website, Defendant provides users with the ability to subscribe to the Website to gain access to Defendant's library of video games through the Ubisoft+ Service (the "Subscribers) or otherwise search for and purchase Defendant's video games (the "Purchasers") (collectively with Subscribers, the "Consumers"). ¶¶ 1, 2. After a Consumer purchases a video game from the Website or subscribes to the Ubisoft+ service, they can download video games via the Website. ¶¶ 2, 64, 145, 151.

Defendant took overt steps to put the Meta Platforms, Inc. ("Meta" or "Facebook") tracking Pixel (the "Facebook Pixel" or the "Pixel") on the Website (¶¶ 4, 9) and agreed to the Meta Business Tools Terms as condition of using the Facebook Pixel. ¶ 73. Defendant further used webpage naming practices and metadata to include search terms, video game titles or descriptions, and disclose the location and content of webpages (collectively, the "Video Request Data") embedded within the webpages. ¶¶ 12, 15. The multi-step process for placing the Facebook Pixel in individual webpages – plus the decision to use video game titles in webpage names – were steps knowingly taken by Defendant. ¶ 40. The Facebook Pixel employed on the Website disclosed subscribers' unique and unencrypted Facebook ID ("FID" or "UID"), their fr_ cookie containing an encrypted Facebook ID (the "fr cookie"), and subscribers' Video Request Data, all in a single transmission to Facebook. ¶¶ 10-11, 89-95, 97, 105-108. The FID enables an ordinary person to easily identify the specific website visitor associated with the FID by providing the precise location of the visitor's Facebook profile. ¶¶ 103-106. Plaintiffs' Facebook profiles include sufficient identifying information such as their name, location, occupation, photos, relationship status, friend list, and posts. ¶¶ 21-22.

To obtain this information, the Facebook Pixel monitors for specific user activity. ¶¶ 70-71. Here, the Facebook Pixel monitors when users search for games, participate in the purchase process (such as adding to cart or checking out), and download video games. ¶¶ 89-95. The Facebook Pixel then intercepts users' communications with the Website in users' browsers, by copying and redirecting the contents of the communication to Meta. ¶¶ 70-71, 84, 97, 106-108, 124.

Once Meta receives the Facebook Pixel transmissions, it processes the data to allow both the sending website (here, Ubisoft) and Meta to better target advertising to users. ¶¶ 67-68, 99, 111, 126.

## III. LEGAL STANDARD

Under a Rule 12(b)(6) analysis, a motion to dismiss should be denied where the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Somers v. Apple*, 729 F.3d 953, 959 (9th Cir. 2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 960. Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 679.

"In deciding whether the plaintiff has stated a claim upon which relief has been granted, the court accepts her allegations as true and draws all reasonable inferences in her favor." *Humphrey v. J.M. Smucker Company*, 2023 WL 3592093, at *4 (N.D. Cal. May 22, 2023). Finally, "[i]f the court dismisses the complaint, it 'should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Id*. (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)).

Furthermore, pursuant to the Federal Rules of Evidence, courts may judicially notice an adjudicative fact if it is not subject to reasonable dispute because it: "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "Courts may take judicial notice of publications introduced to 'indicate what was in the public realm at the time, not whether the contents of those articles were in fact true.'" Accordingly, the Courts may take judicial notice of undisputed matters of public record, but steps beyond its bounds in accepting the truth of matters asserted therein. *Reynolds v. Binance Holdings Ltd.*, 481 F. Supp. 3d 997, 1002 (N.D. Cal. 2020).

## IV. ARGUMENT

### A. UBISOFT VIOLATED THE VPPA.

A properly pleaded VPPA claim requires a plaintiff to allege that "(1) the defendant disclosed 'personally identifiable information concerning any customer' to 'any person,' (2) the disclosure was made knowingly, (3) the disclosure was not authorized elsewhere in the statute, and (4) the defendant is a 'video tape service provider.'" *Fan v. NBA Properties Inc.*, No. 23-CV-05069-SI, 2024 WL 1297643, at *2 (N.D. Cal. Mar. 26, 2024) (quoting *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015)). Ubisoft urges the Court to dismiss Plaintiffs' VPPA claims based on Plaintiffs' alleged authorization via "distinct and separate consent" and because Ubisoft urges that it is not a video tape service provider ("VTSP"). Both arguments are without merit.

#### 1. UBISOFT IS A VTSP.

Under the VPPA, a "video tape service provider" is one "engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes *or similar audio-visual materials*." 18 U.S.C. § 2710(a)(4) (emphasis added). A consumer is "any renter, purchaser, or subscriber of goods or services from a video tape services provider." 18 U.S.C. § 2710(a)(1). As noted above, Mr. Lakes and Mr. Rajjoub have pleaded both: (1) that they are consumers, ¶¶ 150, 151, and (2) that Defendant is a VTSP. ¶¶ 2, 7, 38, 148.

Ubisoft mischaracterizes the Complaint in attempting to argue "Plaintiffs fail to plausibly allege that they purchased 'prerecorded video cassette tapes or similar audio-visual material.'" MTD, pp. 20-21. The Complaint makes clear that each Plaintiff downloaded at least one video game containing cinematics or cut scenes. ¶¶ 21-22. Relevant case law, some of which Defendant cites to, supports holding that Ubisoft is a VTSP.

In reviewing videogame-cutscene VPPA cases, *Aldana v. GameStop, Inc.* is the starting point. No. 22-CV-7063-LTS, 2024 WL 708589, (S.D.N.Y. Feb. 21, 2024), *motion to certify appeal denied*, No. 22-CV-7063-LTS-VF, 2024 WL 3104345 (S.D.N.Y. June 24, 2024). Like Plaintiffs here, the plaintiff in *Aldana* argued that the video games purchased included "cut scenes" which are video clips within games. "Courts across the country have agreed that short, pre-recorded videos

constitute 'similar audio visual material' under the VPPA." *Aldana*, 2024 WL 708589, at *6 (citing *Golden v. NBCUniversal Media*, LLC, No. 22-9858, 2023 WL 5434378, at *4. The court rejected the defendant's argument that the inclusion of cut scenes was incidental, emphasizing that video games are "substantially involved in the conveyance" of video clips. *Aldana*, 2024 WL 708589, at *6 (citing *In re Vizio, Inc., Consumer Privacy Litig*., 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017)). Given that the defendant was in the business of selling video games that contain VPPA-covered video content, the Court found the plaintiffs' allegations sufficient to establish the defendant's status as a video tape service provider.

The pleadings in this case align with those the court found persuasive in *Aldana* and reflect what the court indicated the plaintiff in *Mendoza* should have alleged. Plaintiffs asserted that they visited the Website while logged into their Facebook account, subscribed to Ubisoft+, and downloaded at least one video game containing cinematics or cut scenes. ¶¶ 21, 22, 132, 151, 174, 198, ¶ 21 n. 4, ¶ 22 n. 5. These allegations mirror those in *Aldana* and demonstrate that Plaintiffs have adequately pleaded Ubisoft is a VTSP.

Defendant's citation to *Mendoza v. Caesars Ent., Inc.*, supports the plausibility of Plaintiffs' Complaint. No. 23-cv-03591, 2024 WL 2316544, (D.N.J. May 22, 2024). In *Mendoza*, the court found that the complaint lacked any allegations that the website included prerecorded content:

> Plaintiff merely alleges in conclusory fashion that Defendant's Website 'provides ... video content in the form of video games' and that 'an entity that provides video games to consumers is a video tape service provider' but alleges no facts in support of these conclusory allegations.

*Mendoza*, 2024 WL 2316544, at *4 (*See* Declaration of Brandon Wise in Opposition to Defendant's Motion to Dismiss ("Wise Decl."), Ex. 1, *Mendoza* Compl.). The *Mendoza* court cited *Aldana v. GamesStop Inc.* and *Golden v. NBCUniversal Media, LLC*, both cases that found that allegations of "cut scenes," or short, prerecorded video clips were enough to render the defendants VTSP. *See Golden v. NBCUniversal Media*, LLC, No. 22-9858, 2023 WL 5434378, at *4 (S.D.N.Y. Aug, 23, 2023) (collecting cases finding providers of prerecorded video clips are video tape service providers) and *Aldana v. GameStop, Inc.*, No. 22-CV-7063-LTS, 2024 WL 708589, at *6 (S.D.N.Y. Feb. 21,

2024) (finding that the "cut scenes" in video games are clearly "video content" covered by the VPPA).

In *Golden*, Defendant argued that it was outside of the scope of the statute because its on-demand "morning shows featuring news and entertainment" were not within the VPPA's scope. *Golden*, 688 F. Supp. 3d at 156. The court disagreed, finding that the defendant's video content fell within the scope of the statute because when analyzing the definition of a VTSP courts "look to a video's format, rather than its subject matter or the provider's identity" *Id*. at 156. The defendant's website allowed users to view pre-recorded audio-visual materials, and as such it was found to be a VTSP. *Id*.

By recognizing that "a department store that sells video tapes" is a VTSP even though most of its business does not concern video tapes, Congress signaled that the VPPA applies to a range of entities that possess personal information regarding citizens' video-viewing habits even if video delivery is not the primary focus of the operations. S. Rep. 100-599 at 9. When Congress amended the VPPA in 2012, it declined to limit the statute's reach to traditional video rental stores, having "considered the impact of the VPPA on the electronic distribution of videos." *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 488 (1st Cir. 2016). Courts have concluded that different entities with varying business models qualify as VTSPs – including those that do not require users to pay for video content – for the simple reason that they deliver pre-recorded video content. *See, e.g., Lebakken v. WebMD, LLC*, 640 F. Supp. 3d 1335, 1340 (N.D. Ga. 2022) (medical information website); *Ambrose v. Boston Globe Media Partners LLC*, 2022 WL 4329373, at *2 (D. Mass. Sept. 19, 2022) (news media company); *Belozerov v. Gannett Co*., 2022 WL 17832185, at *1 (D. Mass. Dec. 20, 2022) (same); *Czarnionka v. Epoch Times Ass'n, Inc.,* 2022 WL 17069810, at *1 (S.D.N.Y. Nov. 17, 2022) (same) *Louth v. NFL Enters. LLC*, 2022 WL 4130866, at *4 (D.R.I. Sept. 12, 2022) (sports league); *Stark v. Patreon, Inc*., 2022 WL 7652166, at *6 (N.D. Cal. Oct. 13, 2022) (content creator platform); *In re Facebook, Inc., Consumer Privacy User Profile Litig*., 402 F. Supp. 3d 767, 799 (N.D. Cal. 2019) (social media company*); In re Vizio, Inc., Consumer Privacy Litig*., 238 F. Supp. 3d 1204, 1221-22 (C.D. Cal. 2017) (television manufacturer).

In *In re Vizio*, the court concluded that "engaged in the business" means that a defendant must be "substantially involved in the conveyance of video content to consumers." 238 F. Supp. 3d at 1221. The court found that a TV manufacturer was nonetheless substantially involved in the conveyance of video where it designed the TV to integrate with streaming applications like Netflix and Hulu and marketed itself as a "passport" to such video content. *Id.* at 1222. The Complaint alleges more: that Ubisoft is engaged in the business of selling and delivering video games directly to consumers, and that those video games include cut scenes. (Compl. ¶¶ 21, 22, 23, 145). Read in the light most favorable to the Plaintiffs, these factual allegations are sufficient to support an inference that video games are "substantially involved in the conveyance" of video clips in the form of cut scenes. *In re Vizio*, 238 F. Supp. at 1221; *see also Aldana*, 2024 WL 708589, at 6.

Furthermore, the Northern District answered this question in *Jackson v. Fandom*, where the defendant similarly argued that the Plaintiff failed to allege that Fandom was engaged in the business of providing video content. This District cited *Stark v. Patreon*, and stated "Courts have generally construed 'similar audio-visual materials' broadly, finding that streaming video delivered electronically falls within that definition." 2023 WL 4670285, at *3 (N.D. Cal. July 20, 2023) (citing *Stark v. Patreon, Inc.*, 635 F. Supp. 3d 841, 851 (N.D. Cal. 2022)). The court found that because Fandom "hosts prerecorded streaming video content," it qualified as a video tape service provider under the VPPA. *Id.*

Ubisoft is engaged in the business of conveying video content to consumers. Plaintiffs' purchase of products from Ubisoft which contain prerecorded video material, as alleged, is all that is required at the pleading stage to properly plead that Ubisoft is a VTSP. In short, Ubisoft qualifies as a VTSP because, like GameStop and Fandom, its business is "designed to enable consumers to seamlessly access" this content. *Vizio*, 238 F. Supp. 3d at 1222.

### 2. UBISOFT DID NOT OBTAIN VPPA RECOGNIZED CONSENT.

#### a. There is not "distinct and separate" consent.

The VPPA requires that a consumer's written consent be "in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer." 18 U.S.C. §

2710(b)(2)(B)(i). A simple reading of the Privacy Policy reveals that it is rife with "other legal obligations" of the consumer. See generally, MTD, Ex. L. While not intended to be an exhaustive list, a short review of the Privacy Policy reveals that it is a multi-faceted amalgamation of the following purported legal obligations:

- The age at which minors can create a Ubisoft account or "have access to some" of the services (*id.* ¶ 2);
- When and for what purpose Ubisoft may collect your Personal Data (*id.* ¶ 3)(emphasis added);
- How data is collected and shared with third parties when a purchase is made (*id.* ¶ 3(c), ¶5);
- How "Data" is collected on a consumer's game console. (*id.* ¶ 3(e));
- How data is collected when a consumer is exposed the third party advertisements (*id.* ¶ 3(g))
- How long Ubisoft keeps your Personal Data (*id.* ¶ 4);
- How Ubisoft shares your Personal Data (*id.* ¶ 5);
- How to obtain a copy of your Data – "Right of access and data portability" (*id.* ¶ 6);
- How to correct your data – "right to rectification" (*id.*)
- How to delete your data – "Right to erasure (right to be forgotten)" (*id.*)
- When Ubisoft can use your data (*id.* ¶ 7)
- Additional information and rights afforded to California residents in accordance with the California Consumer Privacy Act ("CCPA") (*id.* ¶ 9);

Clearly, the Privacy Policy has failed to comply with the VPPA's requirement that a consumer's written consent be *distinct and separate* from any form setting for other legal obligations of the consumer. While Ubisoft summarily argues that there is "distinct and separate" consent via the cookie banner, a generic reference to "the use of cookies" is not "informed" consent. 18 U.S.C. § 2710(b)(2)(B). Further, the cookie banner fails to meet the VPPA's requirement that consent be "written." *Id.* While the VPPA does allow for the obtainment of "written" consent to include

"through an electronic means using the Internet," nothing in the record reflects any affirmative consent by Plaintiffs to the cookie banner. Ubisoft's cookie banner consent runs afoul of the VPPA, which:

> does indeed require video tape service providers to (1) request consumers' consent to a privacy disclosure that addresses only the use of personally identifiable information connected with video purchases and no other privacy topic…

*Cappello v. Walmart Inc.*, No. 18-cv-06678-RS, 2019 WL 11687705, at *2 (N.D. Cal. Apr. 5, 2019). The cookie banner, on its face, addresses multiple uses of cookies, making it non-compliant with the VPPA.

As noted in *Cappello*, "[t]he fact that such consent may be obtained over the Internet does not negate the statute's 'distinct and separate' form requirement. *Id*. Nor is designing a VPPA compliant website a burden, as Ubisoft could have chosen to have a separate confirmation for consumers to assent to disclosures involving video services. *Id*. For a company with over 2.9 billion monthly active users and over $2 billion a year in revenue, this is not a Herculean task. Compl., ¶ 65. In short, Ubisoft's cookie banner and Privacy Policy fail to comply with the "distinct and separate" requirement for written consent pursuant to the VPPA.

**b. No consent complies with the VPPA's temporal limitations.**

Ubisoft's Privacy Policy and cookie banner also run afoul of the timing requirements for proper VPPA consent. Per the text of the statute, consent may be given either at the time disclosure is sought or given in advance of disclosure, for a set period of time not to exceed 2 years. 18 U.S.C. § 2710(b)(2)(B)(ii)(I)-(II).

Ubisoft, again, glosses over a VPPA consent requirement. The cookie banner neither obtains consent at the time of disclosure (as the disclosures occur on various web actions and the loading of different webpages, nor for future disclosures. *See* MTD, Exs. A, L. Ubisoft does not argue that the Privacy Policy attempts compliance with the 2-years outside limit for advance consent, nor can it. *See* MTD, Ex. L (no 2-year limitation of consent). Instead, Defendant apparently relies on the theory that simply visiting the Website site is a sufficient affirmation of consent. MTD, p. 12 ("all Website

users expressly opt in to the collection, use, and sharing of their information by way of conspicuous terms (1) when they *begin browsing* the Website….") (emphasis added). However, this theory must be rejected because the act of loading a webpage cannot be deemed proper consent, let allow VPPA compliant consent. As such, neither the cookie banner or Privacy Policy comply with the VPPA's consent timing requirements, and therefore Ubisoft's motion must be denied.

### B. UBISOFT VIOLATED THE ECPA.

#### 1. UBISOFT'S CONDUCT IS NOT IMMUNIZED UNDER 18 U.S.C. § 2511(2)(d).

The ECPA allows for the interception of a communication only "where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act ...." 18 U.S.C. § 2511(2)(d). There are two exceptions pursuant to 18 U.S.C. § 2511(2)(d): (1) where a party to a communication directly intercepts the communication (the "party exception"); or (2) where a party to a communication provides prior consent to a third party's interception of the communication (the "consent exception"). Neither the party exception or consent exception are applicable where the communication is intercepted "for the purpose of committing any criminal or tortious act ...." 18 U.S.C. § 2511(2)(d) (the "crime-tort exemption").

##### a. The Party Exception does not apply to Ubisoft's Use of the Pixel.

Plaintiffs' communications to Ubisoft were "intercepted" by joint action between Ubisoft and Meta, in that (i) Ubisoft intentionally added the Facebook Pixel to its Website; and (ii) Meta designed the Facebook Pixel to intercept the contents of Plaintiffs' electronic communications to Ubisoft via Plaintiffs' computer browser. ¶¶ 122-125. Plaintiffs did not know and did not consent to Meta's interception of Plaintiffs' PII, which was used by both Defendant and Meta to improve their collective and independent advertising and marketing efforts. *Id.* Defendant deliberately sought to monetize users' protected information by facilitating these interceptions for targeted advertising and other economic gains. *Id.* By doing so, Ubisoft, "opened a digital door and invited Facebook to enter that door and extract information from within." *Czarnionka v. Epoch Times Ass'n, Inc.*, No. 22 CIV. 6348 (AKH), 2022 WL 17069810, at *3 (S.D.N.Y. Nov. 17, 2022).

Because Ubisoft is not the party intercepting Plaintiffs' communications, the party exception does not apply to Ubisoft.

**b. The Consent Exception does not apply to Ubisoft.**

"[F]or the consent exception under the [ECPA] in civil cases ... it makes ... sense to place the burden of showing consent on the party seeking the benefit of the exception ...." *Heerde v. Learfield Commc'ns, LLC*, 2024 WL 3573874, at *20 (C.D. Cal. July 19, 2024) (quoting *In re Pharmatrak, Inc.*, 329 F.3d 9, 19 (1st Cir. 2003)). Thus, "'as the party seeking the benefit of the exception,' it is [defendant]'s burden to prove consent." *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1063 (N.D. Cal. Mar. 12, 2021) (quoting *Matera v. Google Inc.*, 2016 WL 5339806, at *51 (N.D. Cal. Sept. 23, 2016)); *see generally Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 WL 1744107, at *2 (9th Cir. May 31, 2022) (holding that the plaintiff met his pleading burden by alleging that he did not provide express consent.).

Ubisoft's claim of consent fails for two independent reasons: (1) Ubisoft must establish that a party to the communication provided consent to *Meta*, the intercepting party, to be eligible for protection provided by 18 U.S.C. § 2511(2)(d) (providing protection where "one of the parties to the communication has given prior consent to such interception"); and, (2) even where consent provided to Ubisoft sufficed for protection pursuant to 18 U.S.C. § 2511(2)(d), Ubisoft must show that such consent "explicitly notif[ied] users of the practice at issue." See *Brown*, 525 F. Supp. 3d at 1063. Ubisoft fails on both accounts.

**i. Ubisoft failed to establish a party to the intercepted communications consented to Meta's interception of PII.**

For the consent exception to apply, Ubisoft must establish that "one of the parties to a communication has given prior consent" to a third party's interception of the communication. 18 U.S.C. § 2511(2)(d). Ubisoft has failed to make this showing. Assuming, *arguendo*, Ubisoft gave implicit consent for Meta's interceptions by using the Facebook Pixel, Meta's Terms governing the Pixel explicitly prohibit the interception of Plaintiffs' PII. ¶¶ 77-79. Meta did not offer Defendant *carte blanche* data interception services: Meta conditions use of the Facebook Pixel on agreement

to the Meta Business Tools Terms, which requires Facebook Pixel users, like Ubisoft, to agree to limits and conditions put on the use of the Facebook Pixel, where the Terms prohibit the use of the Facebook Pixel to intercept sensitive or legally protected information. ¶¶ 73-84. Thus, any consent provided by Ubisoft would be constrained by Meta's Business Tools Terms, which explicitly forbids Ubisoft's use of the Facebook Pixel to intercept Plaintiffs' PII. Ubisoft's Motion does not even suggest that Ubisoft provided any consent for *Meta*'s interceptions, instead focusing on its own data collection practices. *See* MTD at 5-7. Thus, Ubisoft has failed to show that either Ubisoft consented to Meta's interceptions, and any purported consent does not cover Meta's interception of Plaintiffs' legally protected PII.

**ii. Ubisoft failed to establish Plaintiffs consented to Meta's interception of PII via Ubisoft's disclosures and Terms.**

Ubisoft's consent defense (MTD at 5-7, 10-11) requires that Ubisoft establish its terms and notices actually disclosed its specific practice of exposing Plaintiffs' PII to interception by Meta. *See Brown*, 525 F. Supp. 3d at 1063 (finding a defendant must have "explicitly notif[ied] users of the practice at issue" to establish consent); *In re Google, Inc*., 2013 WL 5423918, at *12-13 (N.D. Cal. Sept. 26, 2013) (consent "can be explicit or implied, but any consent must be actual" where "actual consent" necessitates disclosures that "explicitly notify" users of the practice at issue); *Campbell v. Facebook, Inc*., 77 F. Supp. 3d 836, 847–48 (N.D. Cal. 2014) (explaining that consent requires disclosures gave users notice of the ''specific practice'' at issue). The disclosures must have only one plausible interpretation for a finding of consent. *In re Facebook, Inc., Consumer Privacy User Profile Litig*., 402 F. Supp. 3d 767, 789-90, 794 (N.D. Cal. 2019) ("[I]f a reasonable ... user could have plausibly interpreted the contract language as not disclosing that [the defendant] would engage in particular conduct, then [the defendant] cannot obtain dismissal of a claim about that conduct (at least not based on the issue of consent)").

Here, Plaintiffs allege that two pieces of information are combined to form PII: (1) video game titles shared through URLs, parameters, and metadata (¶¶12, 89-82); and, (2) cookies which contain Facebook identifiers, such as the c_user cookie which contains an unencrypted Facebook

ID (“FIDs”) and the fr_cookie, which contains an encrypted Facebook identifier (*see, e.g.,* ¶¶97-105), which are combined into a transmission and sent to Meta (¶ 87). In the face of these allegations, Ubisoft claims it provided adequate disclosures via their Cookies Banner, Cookie settings Pop-Up, and Privacy Policy. MTD at 10. Ubisoft distorts the statements or disclosures made to consumers. Ubisoft’s Cookies Banner and settings Pop-Up merely discuss the use of cookies generally, with no reference to VPPA-protected PII. *See* MTD, Exhibits B-F. Exhibit F, for example, offers consumers a form disclosure that “sharing and recording of your website activity, including the sharing of your game browsing and purchase activity with Ubisoft’s partners.” The disclosure is made in the context of “the use of cookies to offer you ads tailored to your interests” and, significantly, does not disclose that video game titles are being combined with identifying information. *See* MTD, Exhibit F. Even if the Cookie settings Pop-Up in Exhibit F sufficiently put users on notice (it does not), Ubisoft admits that its additional disclosure was only available as of the date of Cristina Arion’s Declaration at ¶6. *See* MTD, Ex. A (noting the Cookie Settings Pop-Up in Exhibit F was in place as of the date of the Declaration). There is no evidence in the MTD that the disclosure in Exhibit F, even if sufficient, was available at the time plaintiffs accessed the Website.

Ubisoft’s Privacy Policies also do not discuss Ubisoft’s use of the Facebook Pixel to intercept Plaintiffs’ PII. It is not enough to “inform[] users that their information will be shared with third parties.” MTD at 7. Ubisoft cannot point to language in its Privacy Policies addressing the disclosure of video game titles combined with unique Facebook identifiers. *See Brown*, 525 F. Supp. 3d at 1064 (finding that “the [defendant’s] general disclosure” might lead users to “reasonably conclude” that defendant does not collect data in a manner not specifically enumerated). In fact, the Privacy Policies contradict this exact practice in numerous places. *See* MTD, Ex. L at 2 (noting that when users make a purchase on the Website, *Ubisoft*, not third parties, collect data “needed to process [a user’s] purchase” which may be sent “to our partner service providers that are in charge of the payment and the delivery of your purchase”); Ex. L at 2 (noting Ubisoft, not Meta, collects “visited pages,” and that, separately, Ubisoft “allows some of our partners to set and access their

Cookies on your device”).[1] “Thus, when the disclosures are read together and in the light most favorable to Plaintiffs, a reasonable user would not necessarily understand that they were consenting to the data collection at issue.” *Calhoun v. Google, LLC*, 113 F.4th at 1150 (9th Cir. 2024).

Ubisoft’s Privacy Policy merely notifies users that Ubisoft collects users’ “personal data” so that users “can benefit from [Ubisoft’s] Services” and so players will “adhere to the rules of the game!” *See*, MTD, Ex. L, p.1. Ubisoft defines “Personal Data” or “Data” as information that directly identifies users, such as “last name, first name, email address or telephone number” or information that indirectly identifies users, like “account ID, IP address, cookie identifier or game data.” *Id.* Game data appears related to data collected from users from within video games, “such as: achieved game levels, rewards, rankings, completed game missions, statistics including the game time or the use of the various feature as well as the data associated with any bugs ...” *Id.* at p.2. Ubisoft does not discuss how “Data” properly discloses to users that their VPPA-protected PII, combining the titles of video games with their identifying information, is being shared with third parties. *See In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 793 (N.D. Cal. Dec. 22, 2022) (noting “generalized notice is not sufficient to establish consent” to acquiring legally protected data); *see also Calhoun*, 113 F.4th at 1148 (applying “reasonable person inquiry” to disagreement of definition of “personal information”). Because Ubisoft’s terms contain contradictory information about who has access to users’ information and is ambiguous as to what that information is collected and shared, Ubisoft has not carried its burden in showing that its disclosures adequately disclose the use of the Pixel to intercept Plaintiffs’ PII and cannot show that Plaintiffs gave consent to such practices. *See Calhoun*, 113 F.4th at 1148 (applying “reasonable person inquiry” to conclude that users believed “personal information” was not collected).

---

[1] Even if Ubisoft’s disclosure somehow covered Plaintiffs’ PII, it still does not adequately describe Plaintiffs’ allegations. At most, Ubisoft highlights that it “may share [users’] Data with ... partners who use your data to provide you with personalized advertisements ....” *See* MTD at 7. However, the sharing of data after receiving it more closely resembles Plaintiffs’ allegations regarding the uploading of customer data via customer lists (¶¶109-12), which is separate and apart from allowing third-parties to monitor users’ from their *own browsers* and allow them to intercept communications before they are received by Ubisoft.

Assuming, *arguendo*, Ubisoft disclosed the use of the Pixel to intercept Plaintiffs' PII, Ubisoft must also show that it gave Plaintiffs adequate notice of, or otherwise ensured Plaintiffs agreed to, Ubisoft's disclosures to have created a valid contract.

A valid contract must be formed through mutual assent. Under Ninth Circuit precedent, "an enforceable contract will be found based on an inquiry notice theory only if: (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022).

Ubisoft has failed to show either factor existed here. First, there is no evidence supporting the existence of reasonably conspicuous notice of the Cookie Banner and Cookie settings Pop-Up. *See* Exhibits B-F. Ubisoft cropped its Exhibits in a way that makes the surrounding webpage unviewable, preventing any party from seeing where those notices supposedly existed in a webpage. However, "[t]o be conspicuous… a notice must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." 30 F.4th at 856. In *Berman*, the Ninth Circuit noted that details matter: the size and color of font, the contrast of font against a background, whether other visual elements draw the user's attention away, etc. *Id.* Second, Defendant does not contend the Cookie Banner and Cookie settings Pop-Up were agreed to through a clickwrap agreement, but rather that they "allow[]" users to select options and "may" click to agree. *See* MTD, Ex. A, ¶ 6.[2] Ubisoft's motion to dismiss and Exhibits do not provide the facts or details necessary to conclude such notices were sufficiently conspicuous or that consumers agreed to such terms.

[2] *See also*, *India Price v. Carnival Corp.*, 712 F. Supp. 3d 1347, 1359 (S.D. Cal. 2024) (cookie banner at bottom of webpage found insufficient browsewrap and did not provide consent to defeat wiretap claim.)

**iii. Ubisoft failed to establish Plaintiffs consented to Meta's interception of PII via Ubisoft's disclosures and Terms.**

Consent is not a defense to the ECPA where the ''communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.'' 18 U.S.C. § 2511(2)(d). Under this exception, Plaintiffs must allege that either the ''primary motivation or a determining factor in [the interceptor's] actions has been to injure plaintiffs tortiously.'' *In re Google Inc., Gmail Litig*., 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014) (quoting *In re DoubleClick Inc. Privacy Litig*., 154 F. Supp. 2d 497, 518 (S.D.N.Y. 2001)). Here, Ubisoft used the Pixel to allow Meta to intercept Plaintiff's communications containing PII for the purpose of improving their marketing efforts, which occurs through a process of associating data captured on the Website with preexisting user profiles. ¶¶ 9, 15, 40, 124, 200; *see Planned Parenthood Fed'n of Am., Inc., v. Ctr. for Med. Progress*, 214 F. Supp. 3d 808, 828 (N.D. Cal. 2016) (holding that "defendants' subsequent disclosures of the contents of the intercepted conversations for the alleged purpose of further invading the privacy of plaintiffs' staff satisfies" the crime-tort exception).

**iv. The crime-tort exception independently prevents Ubisoft from claiming a defense under 18 U.S.C. § 2511(2)(d).**

Even to the extent Ubisoft met its burden in showing Plaintiffs consented to Meta's interceptions (which it did not), the crime-tort exception applies to enforce Ubisoft's liability under the ECPA. The exceptions under §2511(2)(d) cannot apply where, as alleged here, the "communication is intercepted for the purpose of committing any tortious or criminal act in violation of the Constitution or laws of the United States or of any State." Ubisoft does not claim anywhere in its Motion to Dismiss that the crime-tort exception does not apply.

The crime-tort exception focuses on whether the purpose for the interception was criminal or tortious. *Cooper v. Mount Sinai Health Systems, Inc.*, No. 23-cv-9485, 2024 WL 3586357, at *6 (S.D.N.Y. July 30, 2024) (citing *Caro v. Weintraub*, 618 F.3d 94, 99-100 (2d Cir. 2010)). Plaintiffs allege that Ubisoft used Meta's tools to intercept Ubisoft's communications with Plaintiffs, resulting

in violations of the VPPA and an intrusion into Plaintiffs' seclusion. *See* Compl. *See, e.g.,* ¶¶ 39-40, 88, 174. Ubisoft acted with intent to share Plaintiffs' PII with third parties for, at a minimum, advertising purposes, in violation of the VPPA, and Ubisoft installed the Facebook Pixel onto its Website so that Meta could intercept Plaintiffs' communications. *See, e.g.,* ¶ 126.

The VPPA prohibits the disclosure of PII, but allows the disclosure of names, addresses, and subject matter of audio visual materials, so long as the disclosure "is for the exclusive use of marketing goods and services directly to the consumer" ***and*** the "disclosure does not identify the title [or] description ... of any ... audio visual material ...." 18 U.S.C. § 2710(b)(2)(D); 2710(b)(2)(D)(i)-(ii). In short, the *use* of the disclosed video titles to market directly to Plaintiffs is prohibited under the VPPA, which is "independent of the interception itself." This gives rise to the application of the crime-tort exception here. *See Kane v. University of Rochester*, No. 23-cv-6027-FPG, 2024 WL 1178340, at *7 (W.D.N.Y. Mar. 19, 2024) (finding use of Pixel to disclose legally protected communications to Meta for marketing purposes invoked crime-tort exception); *Castillo v. Costco Wholesale Corporation*, No. 2:23-cv-01548, 2024 WL 4785136, at *7 (W.D. Wash. Nov. 14, 2024) (same); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 901–02 (C.D. Cal. 2024) (same).

Here, the basis for finding a criminal purpose is not Ubisoft's mere disclosure or Meta's interception. The criminal purpose is underpinned through Ubisoft's business arrangement with Meta, which reveals Ubisoft's intent to profit commercially from exploiting PII, in violation of the VPPA. *See, e.g., Cooper*, 2024 WL 3586357, at *9 (finding defendant's "business arrangement with Facebook" to exploit legally protected information sufficed to infer criminal intent); *Kane*, 2024 WL 1178340, at *7 (finding the use of legally protected information for marketing purposes "was sufficient to invoke the crime-tort exception"); *Kurowski v. Rush Sys. for Health*, No. 22-c-5380, 2024 WL 3455020, at *6 (N.D. Ill. July 18, 2024) (same); *Castillo*, 2024 WL 4785136, at *6 ("[T]here is no bright-line rule insulating financial motives from the crime-tort exception."); *Gay v. Garnet Health*, No. 23-cv-06950 (NSR), 2024 WL 4203263, at *4-5 (S.D.N.Y. Sept. 16, 2024) (finding Second Circuit precedent, as well as precedent in other circuits, supported invoking the crime-tort exception for wiretapping allegations involving the interception of legally protected

information for marketing purposes); *Walgreen Co.*, 733 F. Supp. 3d, at 901 ("[E]ven where a defendant is arguably motivated by monetary gain, the crime-tort exception may nonetheless apply ...."). Thus, Ubisoft cannot evade liability under §2511(2)(d).

### C. PLAINTIFFS ADEQUATELY ALLEGE INTRUSION AND INVASION OF PRIVACY CLAIMS.

Defendant incorrectly contends that Plaintiffs' "awareness of the Website's use of cookies and pixels necessarily undermines their ability to plausibly" allege that they had a reasonable expectation of privacy." MTD at 14. This analysis does not comply with California law. As stated throughout California case law, "California has recognized … [an] interest[] in precluding the dissemination or misuse of sensitive and confidential information." *In re Vizio, Inc. Consumer Privacy Litig*., 238 F. Supp 3d 1204, 1232 (C.D. Cal. 2017); *In re Google Inc. Cookie Placement Consumer Priv. Litig*., 806 F.3d 125 (3d Cir. 2015). This includes even basic personally identifiable information. *See Padron v. Lara*, 2018 WL 2213462, at *14 (E.D. Cal. May 11, 2018) ("California courts recognize a constitutionally protected interest in a person's name, address, and phone number.") (collecting cases). Courts also recognize "[i]ndividuals maintain the expectation that entities will not ... collect such broad swaths of personal information absent consent." *In re Facebook, Inc. Internet Tracking Litig.,* 956 F.3d 589, 604 n. 7 (9th Cir. 2020).

Here, Plaintiffs have alleged a reasonable expectation of privacy in the data Defendant assisted Meta in intercepting. More specifically, Plaintiffs allege Meta intercepted personally identifiable information, including information protected under statute such as the video games they are purchasing and their Facebook profiles. Compl. ¶¶ 105, 107. Consequently, Defendant assisted Meta in collecting consumers sensitive and confidential information to improve the effectiveness of its and Meta's advertising and marketing. Compl. ¶ 124. Because, as stated above, consumers, including Plaintiffs, did not consent to Meta's interception, did not know Meta was involved in the data collection, and did not consent to a third-party's monetization of their personal data, the collection violates societal norms and federal and state statutes. Courts have held this type of

information is subject to a reasonable expectation of privacy. *See Padron v. Lara*, 2018 WL 2213462, at *14 (E.D. Cal. May 11, 2018).

Defendant attempts to argue that Plaintiffs' alleged agreement to the Websites terms of service amounts to informed consent to the sharing of their personal information. As stated above, Plaintiffs did not consent and as such maintained their reasonable expectation of privacy.

**D. PLAINTIFFS SUFFICIENTLY PLEAD THEIR CIPA § 631 CLAIMS.**

"The analysis for a violation of CIPA is the same as that under the federal Wiretap Act," which requires a showing of an interception of a communication. *Underhill v. Kornblum*, No. 3:16-cv-1598, 2017 WL 2869734, at *6 (S.D. Cal. Mar. 16, 2017). CIPA protects individuals' right to control who receives their communications and that right is violated when communications are disclosed "to an unannounced second auditor, whether that auditor be a person or mechanical device." *Ribas v. Clark*, 38 Cal. 3d 355, 360-61 (1985).

"CIPA prohibits any person from using electronic means to 'learn the contents or meaning' of any 'communication' 'without consent' or in an 'unauthorized manner.'" *Facebook Tracking*, 956 F.3d, at 607 (*quoting* Cal. Pen. Code § 631(a)). Liability under § 631(a) occurs in one of four ways: (1) wiretapping a telegraph or telephone wire or cable ("Clause One"); (2) willfully and without the consent of all parties to a communication, attempting to read or learn the contents of a message or communication while it is in transit or passing over a wire, or received at any place within the state ("Clause Two"); (3) a person who uses or attempts to use any information obtained through the actions outlined in Clause One or Clause Two ("Clause Three"); and (4) any person who aids, agrees with, employs, or conspires with any person who unlawfully does, permits, or causes harm under Clause One, Clause Two, or Clause Three ("Clause Four"). See Cal. Pen. Code §631(a). Here, Plaintiffs allege that Meta has violated Clauses Two and Three by intercepting Plaintiffs' PII and using the contents to target Plaintiffs with advertising *See* Compl. ¶¶ 166, 179, 180, 199. Ubisoft has aided Meta's interception, and similarly used Plaintiffs' PII for marketing purposes, resulting in liability under Clauses Three and Four. Compl. ¶ 215. Ubisoft claims that Plaintiffs fail to state a claim pursuant to §631(a) because their Clause Two claim against Meta

Plaintiffs did not allege the interception occurred "in transit" and because of the CIPA "party exception." MTD at 17-19.

### 1. Plaintiffs Sufficiently Alleged Meta Intercepted Plaintiff's PII "In Transit."

CIPA § 631 prohibits the interception of communications while they are "in transit or passing over any wire, line, or cable… or is being sent from, or received at any place within this state[.]" To satisfy the "in transit" requirement, communications "must be acquired during transmission, not while ... in electronic storage." *Konop v. Hawaiian Airlines, Inc*., 302 F.3d 868, 878 (9th Cir. 2002). While a plaintiff must do more than "merely restate[] the pleading requirement of real time interception", *Esparza v. Gen. Digit. Inc.,* 2024 WL 655986, at *4 (C.D. Cal. Jan. 16, 2024), "a plaintiff is not expected to prove or even know how and when its communications were captured ...." *D'Angelo v. Penny Opco, LLC*, 2023 WL 7006793, at *20 (S.D. Cal. Oct. 24, 2023); *Esparza v. UAG Escondido A1 Inc*., 2024 WL 559241, at *3 (S.D. Cal. Feb. 12, 2024) (finding "allegations that [communications] are intercepted in real time" sufficiently "support the 'in transit' requirement"). "[A] pleading standard to the contrary would require the CIPA plaintiff to engage in a one-sided guessing game because the relevant information about data capture typically resides uniquely in the custody and control of the CIPA defendant and its third-party recorder." *Mata v. Zillow Grp., Inc*., No. 24-cv-01095-DMS-VET, 2024 WL 5161955, at *15-16 (S.D. Cal. Dec. 18, 2024) (*quoting D'Angelo v. Penny Opco, LLC, 2023 WL 7006793*, 2023 WL 7006793, at *8).

Here, Plaintiffs alleged that the Pixel Events caused Plaintiffs' PII, including their Search Terms, to be sent to Meta when: (1) users entered the searches into the search bar; (2) when users requested specific video game webpages by clicking on links or images; (3) when users click a button to add games to their digital carts; (4) when users click to checkout; and, (5) when users click to purchase a game. See ¶¶ 88-97, Figures 22 (sic)-13. This information was captured, copied, and redirected from users' browsers. ¶¶ 70, 84, 97, 106-08, 124; *see James v. The Walt Disney Co*., No. 3:23-cv-2500, 2023 WL 7392285, at *15-16 (N.D. Cal. Nov. 8, 2023) (finding alleged communications in transit where, "once [tracking code] is on the device, it then begins to intercept

communications when the user makes communications to the website") (emphasis in original). At the pleading stage, this is sufficient.

### 2. The CIPA Party Exemption Does Not Apply to Meta.

Ubisoft argues it cannot wiretap conversations on its own website and its status as a party to the communications at issue vitiates its liability. *See* MTD at 19. This misstates the operation of the party exception. Ubisoft's mere status as a party to the conversation only exempts its conduct where Ubisoft is the intercepting party. Plaintiffs allege that Ubisoft installed the Pixel on its Website to allow Meta to intercept Plaintiffs' communications. *See* ¶¶ 9, 83, 175, 176, 179, 200, 203 216. While Defendants ostensibly benefitted from the intercepted information as part of their business operations and strategy, it was Meta that performed the actual interception. *See*, *e.g., Id*. Simply stated, because Defendant is not the intercepting party, and Meta is not a party to the conversation, the party exception does not apply here. *See* MTD at 10-11 (focusing on Ubisoft's status as a party to the communication). Defendant needed, and failed, to argue that: (i) Meta is a party to the communication; or that (ii) all parties to the communication consented to Meta's interception.

Ubisoft relies on *Williams v. What If Holdings, LLC* ("*Williams I*"), No. C 22-03780 WHA, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) and *Licea v. Am. Eagle Outfitters, Inc*., 659 F. Supp. 3d 1072 (C.D. Cal. 2023) to support their proposition that the party exception applies here. Ubisoft misrepresents the holdings in each of these cases. In *Williams I*, plaintiff alleged that a website defendant used a tracking defendant's services to record her activity on a website, where plaintiff "ma[de] no allegation that [tracking] defendant user her information in any way ...." 2022 WL 17869275, at *2. The *Williams I* court concluded that because plaintiffs did not allege that the software vendor independently used the gathered data, the software vendor did not qualify as a "third party." *Id*. at *3; *see Licea*, 659 F. Supp. 3d at 1083 (finding party exception applied because plaintiffs did not allege "the third party has the ability to use the information independently"). Here, Plaintiffs have alleged information missing in *Williams I* and *Licea*—Meta collects and analyzes user data from a variety sources, including websites (¶¶68-69), where that data is monetized by Meta

via selling targeted advertising to the advertisers interested in purchasing ads from Facebook (¶¶66-67). In short, Meta independently benefits from the intercepted information.

Further, courts are unsettled on how "the party exception applies in the context of third-party software, as well as how stringently pleading standards should be applied." *Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1118 (S.D. Cal. 2024) (internal citation omitted). There are two problems with the approach adopted by *Williams I* and *Licea*: "[t]he first is that it interprets the second prong of the statute ... based on the intentions and usage of the prospective third party ... [b]ut the third prong of the statute already penalizes 'use'"; and, "[t]he second problem with this view is that it was not the California Supreme Court's stated rationale in *Ribas*: The *Ribas* Court did not consider the wife's friend's intentions or the use to which they put the information ...." *Javier v. Assurance IQ*, LLC, 649 F. Supp. 3d 891, 900 (N.D. Cal. Jan. 5, 2023) (citing (1985)); *see Price v. Carnival Corp*., No. 3:23-cv-236, 2024 WL 221437, at *5-7 (S.D. Cal. Jan. 19, 2024) (courts decline to construe software providers as "extensions" of the websites that employ them "where the software performs more than the ordinary function of a tape recorder"). The more logical interpretation of the party exception asks whether the interceptor has "the capability to use its record of the interaction for any other purpose" or whether service is so ubiquitous that it renders the interceptor "party to the 'firsthand dissemination'" of the communication. *Id*. Other courts find the question of whether a third-party interceptor was a party to the communication was not ripe for discussion at the motion to dismiss stage. *See, e.g., Kauffman v. Papa John's Int'l, Inc*., Case No. 22-cv-1492-L-MSB, 2024 WL 171363, at *7 (S.D. Cal. Jan. 12, 2024) ("Whether [the software provider] acts akin to a tape recorder or whether its actions are closer to 'an eavesdropper standing outside the door' is a question of fact which is better answered after discovery into the ... technical context of the case.") (*citing In re Facebook, Inc. Internet Tracking Litig*., 956 F.3d at 607); *see also Yoon*, 549 F. Supp. 3d at 1081 ("The question thus becomes, in analogue terms: is Quantum Metric a tape recorder ... or is it an eavesdropper standing outside the door? This is a question of fact for a jury, best answered after discovery into the storage mechanics of [the software]."). In any case, the party exception does not bar liability for Ubisoft's violations at the motion to dismiss stage.

### 3. DEFENDANT AIDED AND ABETTED META'S WIRETAPPING

As Plaintiffs have adequately pled that Meta intercepted Plaintiffs' communications in transit, Defendant's aid to Meta renders it liable for Meta's interceptions. *See D'Angelo*, 2023 WL 7006793, at *18-20 (holding defendant may be held liable for aiding and abetting third party's violation of Clause Two of §631(a)); *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900-01 (N.D. Cal. Jan. 5, 2023) (same).

Absent Defendant's creation, configuration, and installation of the Pixel on the Website (see ¶¶ 78-88), Plaintiffs' and users' information would not have been intercepted by Meta on the Website. This suffices under §631(a) Clause Four. *See Walgreen, Co*., 2024 WL 2263395, at *16 (finding intent where plaintiffs alleged that defendant "intentionally configured the Pixels to capture the 'characteristics' of users' communications with defendant's websites, including their IP addresses and Facebook IDs, as well as the 'content' of users' communications, which includes the links, pages, and tabs users click and view and the search terms they employ"); *D'Angelo*, 2023 WL 7006793, at *18-20 (sustaining CIPA claim where plaintiff alleged defendant allowed third party to contemporaneously duplicate conversations with defendant).

## E. PLAINTIFFS SEEK LEAVE TO AMEND.

Rule 15(a)(2) requires leave to amend be granted "when justice so requires." This policy is to be applied with "extreme liberality." *Eminence Capital, LLC. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003); *see also Dytch v. Moussaka Mediterranean Kitchen LLC*, No. 20-CV-0603SBA, 2022 WL 36006, at *1 (N.D. Cal. Jan. 4, 2022). Additionally, similar leave was granted in a § 17533.7 case. *See*, *Flodin v. Cent. Garden & Pet Co.*, No. 21-CV-01631-JST2022 WL 20299955, at *3 (N.D. Cal. Jan. 20, 2022).

Should the Court be persuaded to dismiss any part of Plaintiffs' Complaint, they seek leave to file an amended complaint. Notably, Plaintiffs have not filed an amended complaint in this matter.

## V. <u>CONCLUSION</u>

For the reasons stated herein, Defendant's motion must be denied. If the Court is inclined to grant the motion in whole or part, Plaintiffs respectfully request leave to file a First Amended Complaint to remedy any perceived issues.

Dated: February 7, 2025

Respectfully Submitted,

**PEIFFER WOLF CARR**
**KANE CONWAY & WISE LLP**

*/s/ Brandon M. Wise*
Brandon M. Wise (*pro hac vice*)
Domenica M. Russo (*pro hac vice)*
PEIFFER WOLF CARR
KANE CONWAY & WISE, LLP
One US Bank Plaza, Suite 1950
St. Louis, MO 63104
Tel: (314) 833-4825
bwise@peifferwolf.com
drusso@peifferwolf.com

Sara Beth Craig (BAR NO. 301290)
PEIFFER WOLF CARR
KANE CONWAY & WISE, LLP
555 Montgomery Street, Ste. 820
San Francisco, CA 94111
Telephone: 415-766-3544
Facsimile: 415-840-9435
Email: scraig@peifferwolf.com

Mark S. Reich (*pro hac vice*)
Colin A. Brown (*pro hac vice*)
LEVI & KORSINSKY, LLP
33 Whitehall Street, 17th Floor
New York, NY 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
Email: mreich@zlk.com
Email: cbrown@zlk.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

On February 7, 2025 I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all persons registered for ECF. All copies of documents required to be served by Fed. R. Civ. P. 5(a) and L.R. 5-1 have been served.

/s/ *Brandon M. Wise*
Brandon M. Wise