Steven A. Marenberg (SB# 101033)
PAUL HASTINGS LLP
1999 Avenue of the Stars, 27th Floor
Los Angeles, CA 90067
Telephone: (310) 620-5700
stevenmarenberg@paulhastings.com

Aaron Charfoos (*pro hac vice*)
PAUL HASTINGS LLP
71 S. Wacker Drive, 45th Floor
Chicago, IL 60606
Telephone: (312) 499-6016
aaroncharfoos@paulhastings.com

Emma Hutchison (*pro hac vice*)
PAUL HASTINGS LLP
2050 M Street NW
Washington, DC 20036
Telephone: (202) 551-1700
emmahutchison@paulhastings.com

*Attorneys for Defendant*
UBISOFT, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

TREVOR LAKES, and ALEX RAJJOUB *on Behalf of Themselves and All Others Similarly Situated*,

Plaintiff,

v.

UBISOFT, INC.,

Defendant.

Case No. 3:24-cv-06943-TLT

**DEFENDANT UBISOFT, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS**

Judge: Honorable Trina L. Thompson
Courtroom: 9
Hearing Date: April 1, 2025, 2:00 p.m.

Trial date: None set

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ..... 1

II. ARGUMENT ..... 2

A. Plaintiffs Consented to the Use of Cookies and Pixels, Dooming All Their Claims ..... 2

1. Plaintiffs Knowingly and Repeatedly Consented to Use of Cookies and Pixels ..... 2

2. Consent to Use of Cookies and Pixels Was Sufficient Under the ECPA ..... 6

3. Plaintiffs' Consent to Use of Cookies and Pixels Was Sufficient Under the VPPA ..... 8

B. Plaintiffs' Communications Were Not Intercepted Under CIPA ..... 9

C. The Party Exception Applies to Plaintiffs' ECPA and CIPA Claims ..... 10

D. Ubisoft is Not a "Video Tape Service Provider" ..... 11

E. Leave to Amend Should be Denied as Futile ..... 12

III. CONCLUSION ..... 12

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**


*B.K. v. Eisenhower Med. Ctr.*
721 F. Supp. 3d 1056 (C.D. Cal. 2024), *on reconsideration in part,*
2024 WL 2037404 (C.D. Cal. Apr. 11, 2024) ....................11

*Eagle Investment Systems Corp. v. Tamm*
146 F. Supp. 2d 105 (D. Mass. 2001) ....................10

*In re BetterHelp, Inc. Data Disclosure Cases*
2024 WL 3416511 (N.D. Cal. July 15, 2024)....................7

*In re Facebook Biometric Info. Privacy Litig.*
185 F. Supp. 3d 1155 (N.D. Cal. 2016) ....................3

*In re Google Inc. Gmail Litigation*
2014 WL 1102660 (N.D. Cal. Mar. 18, 2014)....................8

*In re Yahoo Mail Litig.*
7 F. Supp. 3d 1016 (N.D. Cal. 2014) ....................7

*Javier v. Assurance IQ, LLC*
2021 WL 940319 (N.D. Cal. Mar. 9, 2021)....................2

*Lee v. Ticketmaster L.L.C.*
817 F. App'x 393 (9th Cir. 2020) ....................3, 4

*Libman v. Apple, Inc.*
2024 WL 4314791 (N.D. Cal. Sept. 26, 2024) ....................9

*Licea v. Vitacost.com, Inc.*
Case No. 22-CV-1854-RSH-WVG, 683 F.Supp.3d 1118 (S.D. Cal. July 24, 2023) ....................11

*Nguyen v. Barnes & Noble Inc.*
763 F.3d 1171 (9th Cir. 2014) ....................3

*Rodriguez v. Ford Motor Co.*
722 F. Supp. 3d 1104 (S.D. Cal. 2024)....................11

*Rodriguez v. Google LLC*
2021 WL 2026726 (N.D. Cal. May 21, 2021) ....................7, 8

*Rodriguez v. Google LLC*
2022 WL 214552 (N.D. Cal. Jan. 25, 2022)....................10

*Silver v. Stripe Inc.*
2021 WL 3191752 (N.D. Cal. July 28, 2021)....................6

*Sussman v. American Broadcasting Companies, Inc.*
186 F.3d 1200 (9th Cir. 1999) ....................7

*U.S. v. Amen*
831 F.2d 373 (2d Cir. 1987)....................7

## I. INTRODUCTION

All of Plaintiffs' Claims should be dismissed as Defendant argued in its Motion to Dismiss. Plaintiffs' central theory in this action is that information about their use of Ubisoft's Website was disclosed to, or intercepted by, Meta without their knowledge or consent. Their claims, however, all face one central defect: for the entire class period, Plaintiffs had the choice, and expressly consented, to the use of cookies that could share their activity on the Website. Ubisoft's Motion to Dismiss explained how each of Plaintiffs' five claims, under the Video Privacy Protection Act (VPPA), the Electronic Communications Privacy Act (ECPA), California Invasion of Privacy Act (CIPA), and common law and constitutional invasion of privacy protections, cannot proceed given this fundamental fact. And while Plaintiffs' Opposition attempts to refute this showing, their arguments fundamentally rewrite the narrative of their consent, mischaracterize Ubisoft's disclosures, and ignore clear terms they agreed to. At bottom, there can be no dispute that Plaintiffs both accepted Ubisoft's Privacy Policy through an enforceable click-wrap agreement and knowingly consented to Ubisoft's Cookie Notice which requires users to opt in to targeted advertising cookies as a condition for the Meta Pixel to load. They did so repeatedly, including when setting up an account and making any purchases on the Website. Plaintiffs' efforts to call for even more granular disclosures—not required by the law—are legally and logically faulty.

Plaintiffs' claims face even more obstacles. The Complaint alleges that Ubisoft is a party to communications intercepted by Meta. Thus, the "party exception" necessarily applies to the ECPA and CIPA claims. Plaintiffs' Opposition cites no law that would require a different conclusion. And Plaintiffs' Opposition also fails to explain how their Complaint adequately shows a real-time, in-flight interception of their communications, as required under CIPA and the ECPA.

Finally, Plaintiffs' VPPA claim asserts an even more novel theory: that game developers can be transformed into "video tape service providers" simply because certain games might include animated cut-scenes. This is an unwarranted extension of the VPPA that Ninth Circuit law does not support.

For all of these reasons, Ubisoft respectfully requests that the Court grant its Motion to Dismiss in full.

## II. ARGUMENT

Defendant's Motion to Dismiss should be granted because Plaintiffs' Complaint is legally and factually deficient. Plaintiffs' Opposition fails to bring forward any credible argument to rescue its claims.

### A. Plaintiffs Consented to the Use of Cookies and Pixels, Dooming All Their Claims

A required element of Plaintiffs' CIPA, ECPA, VPPA, and common law and constitutional invasion of privacy claims is that Ubisoft disclosed their activity on its Website without their knowledge or consent. Ubisoft's Motion established that Plaintiffs consented to the use of cookies on Ubisoft's Website not just once, but *at least three times* during the class period. Plaintiffs' Opposition—which both ignores key evidence and invents new requirements for consent —nevertheless fails to rebut Ubisoft's showing and thus all five of Plaintiffs' claims fail.

1. <u>Plaintiffs Knowingly and Repeatedly Consented to Use of Cookies and Pixels</u>

Because: (1) Ubisoft users are provided with notice and required to affirmatively acknowledge Ubisoft's Privacy Policy and Cookie Notice to use the site, and (2) Plaintiffs took affirmative action to indicate their agreement to these notices, as a matter of established law (and common sense), Plaintiffs knowingly consented to Ubisoft's Meta Pixel use. To start, during the consent flow, the hyperlink to Ubisoft's Privacy Policy (underlined and bolded) was conspicuous and provided adequate notice of Ubisoft's Privacy Policy and sharing of data with third parties for marketing. *See* Ex. H (reproduced below); *cf. Javier v. Assurance IQ, LLC*, 2021 WL 940319, at *3 (N.D. Cal. Mar. 9, 2021) ("the webpage on which Javier provided consent was uncluttered, with only a few entry fields followed by the disclosure on a single page; the text placed hyperlinks in a different color to indicate their selectability; and there were no additional features, such as a dark background or additional links having different formatting, that would have obscured the notice. On similar facts, courts have frequently found notice sufficient.").

**<u>Exhibit H: Account Creation Page</u>**




Such agreements—deemed "clickwrap agreements"—are generally sufficient manifestations of assent. *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014); *In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155, 1165 (N.D. Cal. 2016). For instance, in *Lee v. Ticketmaster*, the Ninth Circuit examined whether a plaintiff validly assented to Ticketmaster's Terms of Use each time he clicked the "Sign In" button when signing into his Ticketmaster account, where three lines below the button, the website displayed the phrase, "By continuing past this page, you agree to our Terms of Use," as well as each time he clicked the "Place Order" button on the site, where "directly above the button, the website displayed the phrase, "By clicking 'Place Order,' you agree to our Terms of Use,"; in both contexts, "Terms of Use" was displayed in blue font and contained a hyperlink to Ticketmaster's Terms." *Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393, 394–95 (9th Cir. 2020). With these facts, the Court found that users did indeed "affirmatively acknowledge the agreement before proceeding," and the "website contain[ed] an explicit textual notice that continued use will act as a manifestation of the user's intent to be bound." *Id.* Likewise, here, Plaintiffs were required to click on a

button with hyperlinked terms to proceed on Ubisoft's Website or make a purchase; and as in *Ticketmaster* they were expressly informed that their continued use manifested their intent to be bound. *See* Ex. A ("By continuing to navigate on the site, you accept the use of cookies by Ubisoft and its partners to offer advertising adapted to your interests"), Ex. B (same, reproduced below); Ex. C ("by clicking the 'accept' button below you specifically consent to sharing and recording of your website activity"); Ex. H (prompting users to check a box to "accept Ubisoft's **<u>Terms of Use</u>**, **<u>Terms of Sale</u>**, and **<u>Privacy Policy</u>**" in order to create an account).[1]

**<u>Exhibit B</u>**




Moreover, the disclosures in Ubisoft's notices are clear and precise. Exs. L, K; *see* Mot. at 3-7. For instance, the Privacy Policy states that Ubisoft may disclose use of the website, including personal data such as an "account ID" or a "cookie identifier" (i.e. a Facebook ID). Ex. L at ¶ 1; Ex. K. (same). Further, the Privacy Policy details that the site may collect and share information when users utilize Ubisoft's games, applications, websites, and online services; it then goes on, stating that, "various types of technologies such as cookies" may "collect such data when you use [Ubisoft's] Services or visit a third party site where we and [Ubisoft's] partners provide content or carry out content use analysis," and that Ubisoft "allow[s] some of our partners to set and access their Cookies on your device." *Id.* at ¶ 3(d); Ex. L (same) (reproduced below).

[1] Plaintiffs' argument that the cropping of Ubisoft's exhibits prevents an analysis of the Website's consent mechanisms is specious. *See* Opp. at 15. Ubisoft can submit supplemental copies of the exhibits should the Court require the full webpage.

**<u>Exhibit L: Privacy Policy</u>** (emphasis added)

> **d) You use our games, applications, websites and online services on a computer or mobile telephone.**
>
> We collect:
>
> - Your **game data**, to improve your experience and the security of our Services such as: achieved game levels, rewards, rankings, completed game missions, statistics including the game time or the use of the various features as well as the data associated with any bugs and malfunctions.
> - Your **login and browsing data**, to enable the operation and security of our Services, such as: visited pages, identifier of your device and the connection (IP address, MAC address), login dates and times, information concerning the browser and the operating system you use.
>
> We use various types of technologies such as **cookies** to collect such Data when you use our Services or visit a third party site where we and our partners provide content or carry out content use analysis.
>
> We allow some of our partners to set and access their Cookies on your device. These partners' use of Cookies is subject to their own privacy policies and not this Privacy Policy.
>
> To refuse Cookies or request their deletion as well as obtain the list of partners who are permitted to store and/or access these Cookies, please see the Cookies page.
>
> You can also adjust your browser settings to understand when these Cookies are stored on your device or to disable the Cookies by consulting your browser's "Help" menu. Please note that these settings may affect your ability to shop online or to access certain features of our Services whenever these Cookies are needed for the operation of our Services.

Ubisoft's entirely separate Cookie Notice and consent flow provides users with *yet another* notice about the use of cookies. Ex. C. Indeed, this Cookie Notice requires that users affirmatively opt in to optional cookies, otherwise no such cookies are permitted. *Id.* In short, unless users affirmatively accept "targeted advertising cookies," no information is disclosed to any third party for that purpose.

**<u>Exs. B & D: Cookie Opt-In Flow</u>**






Thus, Plaintiffs' contention that they never consented to cookies or pixels on Ubisoft's Website because they did not "knowingly" consent is untenable and wrong. *See* Opp. at 21 (refuting CIPA consent on this basis); *id.* at 18-19 (denying consent for invasion of privacy claims for the same reasons); *id.* at 12-14. *Cf. Silver v. Stripe Inc.*, 2021 WL 3191752, at *4 (N.D. Cal. July 28, 2021) (Instacart's Privacy Policy established consent to the alleged conduct challenged under various states wiretapping statutes where provisions disclosed that Instacart may disclose "internet activity" to Instacart's "partners").

For this reason alone, all of Plaintiffs' claims fail.[2] Still, Plaintiffs lodge additional challenges to their consent under the ECPA and VPPA, which also fall short for the reasons explained herein.

2. Consent to Use of Cookies and Pixels Was Sufficient Under the ECPA

Although the showing required for consent under the ECPA does not require particularity, Plaintiffs maintain that they did not provide consent under the ECPA because they were not "explicitly notif[ied]" as Ubisoft's notices do not "address[] the disclosure of video game titles combined with

[2] Plaintiffs concede that the Court's finding of consent to Ubisoft's policies would defeat their "reasonable expectation of privacy" for purposes of their California and common law privacy claims. *See* Opp. at 18-19.

unique Facebook identifiers." *See* Opp. at 18-21. Plaintiffs' argument is wrong for two reasons: (1) the ECPA's consent exception is broadly construed, and (2) the ECPA is a one-party consent statute.

The ECPA does *not*, as Plaintiffs argue, require Ubisoft to specifically disclose the disclosure of "video game titles combined with unique Facebook identifiers." Indeed, it is well-established that granular disclosures (such as the one demanded by Plaintiffs) is simply not required. *See U.S. v. Amen*, 831 F.2d 373, 378 (2d Cir. 1987) ("Congress intended the consent requirement to be construed broadly."). And here, Ubisoft's disclosures were still quite clear as they disclosed (as detailed above) that Ubisoft allows partners to use cookies on the Website, that specific analytics and personalization cookies would be used, and that cookie identifiers and other similar data connected to the use of the site could be collected and shared. *See* Exs. K, L; Ex. E.

In any event, Plaintiffs' objection to consent under the ECPA fails because the ECPA is a one-party consent statute. Here, Plaintiffs' Complaint, Ubisoft's Privacy Policy, and Ubisoft's deployment of pixel code on its Website make clear that Ubisoft consented to Meta Pixel and cookie use (although Ubisoft did not knowingly disclose Plaintiffs' PII). Compl. ⁋ 9 ("Defendant purposefully implemented and utilized the Pixel"); *cf. In re BetterHelp, Inc. Data Disclosure Cases,* 2024 WL 3416511, at *4 (N.D. Cal. July 15, 2024) (BetterHelp's choice to deploy the tracking on its websites, means "one of the parties to the communication"—BetterHelp—gave "prior consent to such interception."); *Rodriguez v. Google LLC*, 2021 WL 2026726, at *6 (N.D. Cal. May 21, 2021); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1026 (N.D. Cal. 2014) ("[T]he consent of one party is a complete defense to a Wiretap Act claim.").

Given the consent from Plaintiffs and Ubisoft alike, Plaintiffs resort to the crime-tort exception. But Plaintiffs' efforts to dispel their consent via the crime-tort exception is wrong as a matter of law. As a threshold matter, the crime-tort exception cannot succeed here because it hinges on alleged violations of the VPPA and intrusion upon seclusion protections. *See* Opp. at 16-17 (contending that the crime-tort exception applies because "Plaintiffs allege that Ubisoft used Meta's tools to intercept Ubisoft's communications with Plaintiffs, resulting in violations of the VPPA and an intrusion into Plaintiffs' seclusion"). This argument has typically been rejected because courts consider the purpose of the interception, not whether it in fact might violate another statute or other law. *Sussman v. American*

*Broadcasting Companies, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999). Moreover, Plaintiffs have not pleaded any, let alone sufficient, facts to plausibly show that "the primary motivation or a determining factor in the interceptor's actions has been to injure plaintiffs tortiously." *Rodriguez*, 2021 WL 2026726 at *6 n.8. Quite the opposite. Plaintiffs contend that the purpose of the interception was not "to perpetuate torts on millions of Internet users, but to make money." *Id.* (citing *In re Google Inc. Gmail Litigation*, 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014)). Namely, the Complaint contends that the motivation underlying the Pixel installation was "economic benefit"—or specifically "to improve the effectiveness of its and Meta's advertising and marketing" and to "monetiz[e] the information via targeted advertising, and other means." Compl. ⁋⁋ 124, 126. Accordingly, Plaintiffs have failed to meet their burden to show that this exception applies.

3. <u>Plaintiffs' Consent to Use of Cookies and Pixels Was Sufficient Under the VPPA</u>

Ubisoft's Motion showed that Plaintiffs expressly consented to Ubisoft's Privacy Policy and Cookie Notice and thus the Meta Pixel and cookies on its website. Mot. at 3-7, 12-13. But Plaintiffs still argue that this was not enough under the VPPA. Specifically, Plaintiffs argue that Ubisoft did not elicit VPPA consent because (1) there are other "legal obligations" in the Privacy Policy, (2) their agreement to the Cookie Notice is not "written" or "'informed' consent" because it "addresses multiple uses of cookies," and (3) they did not consent in advance for a period not exceeding two years. Opp. at 8-9. Each of these arguments ignores the plain language of Ubisoft's notices and the VPPA itself.

First, Ubisoft's Privacy Policy and Cookie Notice do not clump multiple legal obligations, as Plaintiffs contend. The Privacy Policy and Cookie Notice only provide disclosures by Ubisoft. They do not set out any obligations for Website users. Indeed, each example cited by Plaintiffs is a Ubisoft disclaimer or disclosure. For instance, Plaintiffs cite disclosures regarding "How data is collected and shared by third parties when a purchase is made," and "How long Ubisoft keeps your Personal Data," as well as "How data is collected when a consumer is exposed the third party advertisements." *See* Opp. at 8 (citing Ex. L at ⁋⁋ 3(c), 3(g), 4, 5). And Plaintiffs do not explain how the Cookie Policy provides any obligations for Plaintiffs. Such policies are routinely classified as "disclosures" or "statements" by companies, not as obligations of the users. *See, e.g., Libman v. Apple, Inc.*, 2024 WL 4314791, at *5 (N.D. Cal. Sept. 26, 2024) (deeming privacy policies "disclosures").

Second, there can be no dispute that Plaintiffs' consent to the Cookie Notice was both "written" and "informed." Indeed, Website users are prompted with the option to "Set Cookie Preferences." *See* Ex. C. This allows users to individually permit or decline particular cookie types, including essential cookies, analytics cookies (i.e. "cookies to measure the traffic to [the] website"), personalization cookies (i.e. cookies that allow a personalized experienced based on "browsing history and the products offered"), targeted advertising cookies, and multimedia player cookies. *See* Exs. D, E; *see also* Ex. F. Thus, even though the cookies are described on the same screen, users can assent to targeted advertising cookies entirely separately.

In any case, the VPPA does not require such disclosures to stand entirely alone. Rather, the statute states that other "legal or financial obligations" cannot be tethered to VPPA consent. Here, Plaintiffs do not sign onto any legal or financial obligations via the Cookie Notice (or Privacy Policy) that would distract from their consent to the use of cookies and pixels on Ubisoft's Website. Nor would Plaintiffs' suggested interpretation make any sense. Under Plaintiffs' interpretation, every website would need to provide individual, separate screens with click-wrap agreements for every type of cookie utilized. Forcing website users to agree to a dizzying array of separate agreements would defeat their ability to knowingly consent.

Finally, Plaintiffs' temporal argument ignores that consent is elicited with each and every purchase on the site, which for every class member, must have fallen within the last two-years.

**B. Plaintiffs' Communications Were Not Intercepted Under CIPA**

Ubisoft's Motion showed that Plaintiffs have not adequately alleged that their communications were intercepted. Mot. at 17-19. Still, Plaintiffs' Opposition maintains that their conclusory allegations (which are pure legal conclusions) of interception under CIPA are sufficient. Specifically, Plaintiffs contend that "Pixel Events caused Plaintiffs' PII, including their Search Terms, to be sent to Meta" and that checkout, purchase, search, and request information "was captured, copied, and redirected from users' browsers." Opp. at 20. Plaintiffs' arguments—like the allegations in their Complaint—miss the mark because they do not allege how their communications were intercepted *in transit*, rather than as a recipient of the communication, as required. Instead, Plaintiffs' Opposition merely lists instances when information could be transmitted to Meta, without explaining when that happens. *Id*. In that same vein,

Plaintiffs' Complaint also does not allege that any information was intercepted and read in real time. *Cf. Rodriguez v. Google LLC*, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022) ("[u]sing the word 'intercept' repeatedly is simply not enough without the addition of specific facts that make it plausible Google is intercepting [plaintiff's] data in transit").[3] Plaintiffs have therefore failed to allege that their communications were intercepted in transit as required under CIPA.

**C. The Party Exception Applies to Plaintiffs' ECPA and CIPA Claims**

Ubisoft's Motion demonstrated that Plaintiffs' ECPA and CIPA claims cannot survive because the Complaint illustrates that Ubisoft was a party to communications purportedly intercepted by Meta. Mot. at 16, 19-20. To refute Ubisoft's arguments, Plaintiffs argue that Ubisoft is not a party to any communications with Plaintiffs and did not consent to Pixel use. Opp. at 10. Plaintiffs' arguments are both incorrect and inconsistent.

First, Plaintiffs' argument fails because their Complaint alleges that Ubisoft is a party to their communications. Namely, the Complaint contends that the communications at issue were those "between Plaintiffs and members of the Class and the Website [i.e. Ubisoft]" (Compl. ⁋ 200) and that "[w]hile communicating with [Ubisoft] on the Website, users had the contents of their communications with [Ubisoft] intercepted by Meta via the Pixel" (*id.* ⁋ 123). Thus, Plaintiffs' Opposition's argument does not comport with their pleadings.

Plaintiffs' argument not only contradicts their Complaint, but also different sections of the very same brief. At other points in their brief Plaintiffs say that Ubisoft *was indeed* a party and that "Plaintiffs' communications to Ubisoft were 'intercepted' by joint action between Ubisoft and Meta." Opp. at 10.

---

[3] Plaintiffs likewise fail to assert that any communications were intercepted under the ECPA, which requires that an interception be acquired during the "flight" of the communication. While Plaintiffs contend that the Pixel intercepted communications "the instant" they were sent to the Website, it is unclear—because Plaintiffs do not make any allegations—whether and how said communications were actually read in flight. Compl. ⁋ 200; *id.* ⁋ 197 (alleging only that "search terms, browsing information, and PII, were intercepted by the tracking entities and that such communications constituted "electronic communications" under the Wiretap Act); *Eagle Investment Systems Corp. v. Tamm*, 146 F. Supp. 2d 105 (D. Mass. 2001) (plaintiff alleged that defendants acquired the e-mail at issue after it had been sent by the company's comptroller and received by its intended recipients, the acquisition occurred after—not during transmission. Thus, the court concluded, the plaintiff failed to state facts to support a Wiretap Act violation.)

Notably, Plaintiffs fail to cite any relevant authorities to support their argument. *See* Opp. at 21-22. Conversely, there are on-point authorities stating that the party exception applies to website defendants that place third-party analytics tools on their websites. *See, e.g.*, *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1065 (C.D. Cal. 2024), *on reconsideration in part,* 2024 WL 2037404 (C.D. Cal. Apr. 11, 2024) ("Because Defendant was the party that was meant to, and did, receive Plaintiffs' communications on the Website, under the party exception, "any alleged interception of the communications is not actionable."). Thus, there is simply no basis for liability under the first three clauses of CIPA, section 631(a).

And finally, Plaintiffs' allegations are insufficient to show that Meta is not subject to the party exemption for purposes of Plaintiffs' aiding and abetting allegations under CIPA. This is readily shown by holdings in similar cases. *See, e.g., Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1122 (S.D. Cal. 2024); *Licea v. Vitacost.com, Inc.*, Case No. 22-CV-1854-RSH-WVG, 683 F.Supp.3d 1118, 1123 (S.D. Cal. July 24, 2023) ("This Court agrees with those decisions holding that a website owner that engages a vendor to record website-based communications for the website owner's own purposes is not thereby aiding and abetting eavesdropping by a third party in violation of Section 631(a)."). Indeed, while Plaintiffs' Complaint states that Meta read or attempted to read the contents or meaning of communications and that the information collected by Meta "was not for the sole benefit of the Defendant," it does not allege any independent purpose or wrongful conduct by Meta. Rather, the Complaint makes the conclusory allegation that Ubisoft aided and employed "tracking tools to accomplish the wrongful conduct at issue here." Compl. ⁋⁋ 213-215. But that is insufficient. For all these reasons, Plaintiffs' argument that the "party exception" does not apply to their ECPA and CIPA claims should be rejected.

**D. Ubisoft is Not a "Video Tape Service Provider"**

Plaintiffs insist that this Court should find that Ubisoft—a game developer—is a VTSP. This is wrong for two key reasons.

First, courts in this circuit have not applied the VPPA to cut scenes in video games. Not surprisingly then, Plaintiffs rely on an out-of-circuit district court ruling to puff up their argument that

this Court should extend the purview of the VPPA. *See* Opp. at 4 (citing the Southern District of New York).

Second, expanding the scope of the VPPA would be an error. Simply put, there is no indication that the VPPA was intended to cover different, new media like games. While delivering video content via digital mediums (i.e. streaming, Vizio televisions, and the like) is at issue in many of the cases Plaintiffs cite—video games are plainly a far cry from movie, live television, and other such content. *See* Opp. at 6-7. The Court should reject Plaintiffs' efforts to extent the scope of the VPPA.

**E. Leave to Amend Should be Denied as Futile**

Plaintiffs' Request for Leave to Amend should be denied because they have failed to make any showing of how an amended Complaint would cure the defects in their Complaint. *See* Opp. at 23.

## III. CONCLUSION

For the reasons above, all Plaintiffs' claims should be dismissed with prejudice, and without leave to amend.

DATED: February 21, 2025

PAUL HASTINGS LLP

By: */s/ Steven A. Marenberg*
STEVEN A. MARENBERG

*Attorney for Defendant*
UBISOFT, INC.